IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **THE E.W. SCRIPPS COMPANY AND SUBSIDIARIES,** | ) ) ) | |
| Plaintiff, | ) ) | CASE NO. C-1-01-434 |
| vs. | ) ) | JUDGE DLOTT |
| **UNITED STATES OF AMERICA,** | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, The E. W. Scripps Company and its subsidiaries ("Scripps"), submits this brief in opposition to defendant United States of America's Motion to Dismiss. For the reasons set forth herein, defendant's motion should be denied.

## PRELIMINARY STATEMENT

This Court has subject matter jurisdiction over Scripps' claim to recover statutory interest in an amount exceeding $2,245,412 pursuant to 28 U.S.C. § 1346(a)(1). That statutory provision provides both the grant of jurisdiction and the waiver of sovereign immunity that is necessary to subject the defendant to suit in this forum. The United States' argument to the contrary should be rejected by this Court, as it has been rejected by other district courts that have considered it.

This Court also has subject matter jurisdiction over this dispute pursuant to the provisions of 28 U.S.C. § 1340 and 26 U.S.C. § 6611. When read together, these statutes again provide the required grant of jurisdiction and waiver of immunity necessary for suit against the government in this Court.

Accordingly, the United States' Motion to Dismiss should be denied and Scripps should be permitted to move forward in this Court to prosecute its claims for the recovery of the statutory interest that it is owed.

## BACKGROUND FACTS[1]

In 1990, Scripps overpaid its 1986 tax liability by $3,500,000. In 1997, this amount was refunded to Scripps by the Government. Despite the fact that the Government had had the use of Scripps' money for seven years, the amount refunded did not include any interest component.

Scripps is entitled to "statutory interest" pursuant to 26 U.S.C. § 6611 on its tax overpayment.[2] Scripps pursued a timely administrative claim with the Internal Revenue Service ("IRS") for the recovery of this interest. Scripps' administrative claim was denied. This suit followed.

---

[1]    The facts underlying this lawsuit are more fully set forth in Scripps' First Amended Complaint for Refund, filed in this case on August 20, 2001. For purposes of ruling on defendant's motion, the allegations of the Amended Complaint must be accepted as true.

[2]    Section 6611 provides, in relevant part:

> (a) Rate. Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621.

The interest paid under this section is referred to as "statutory" or "overpayment" interest. It is also sometimes referred to herein as "Section 6611 Overpayment Interest."

## ARGUMENT

## I.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE.

There are two separate statutory bases upon which other district courts have expressly recognized their jurisdiction over suits for the recovery of Section 6611 Overpayment Interest. They are discussed below.

### A.   Subject Matter Jurisdiction is Granted Pursuant to 28 U.S.C. § 1346(a)(1).

Section 1346(1)(1) provides:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny civil action against the Untied States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

The United States concedes that this section provides both the waiver of the United States' sovereign immunity and a grant of jurisdiction to the district courts to hear suits over taxes assessed or collected or for the recovery of "deficiency" interest.[3] (Defendant's Motion, pp. 3-4.) See also, Miller v. United States, 784 F.2d 728, 729 (6th Cir. 1986). The Government contends, however, that this is not the case with respect to suits for the recovery of Section 6611 Overpayment Interest. The Government is wrong.

The Government's claim of lack of jurisdiction is premised on the fact that this lawsuit seeks the recovery of interest only. The United States thus claims that this suit falls outside the scope of Section 1346(1)(1). Every court that has directly considered this issue, however, has rejected the Government's contention. See, e.g., Trustees of Bulkeley School v. United States, 628 F. Supp. 802 (D. Conn. 1986); Triangle Corp v. United States, 592 F. Supp.

---

[3]      Deficiency interest--as opposed to Section 6611 overpayment interest--is interest on the amount of tax that is unpaid by the taxpayer.

1316 (D. Conn. 1984), *modified*, 597 F. Supp. 507 (D. Conn. 1984); Doolin v. United States, 737

F. Supp. 732 (N.D.N.Y. 1990), *rev'd on non-relevant grounds*, 918 F.2d 15 (2d Cir. 1990);

General Motors Corp v. United States, 389 F. Supp. 245 (E.D. Mich. 1975); Draper v. United

States, No. 2224, 1962 U.S. Dist. LEXIS 4982 (E.D. Wash. Aug. 17, 1962) (attached hereto as

Exhibit 1).

 In Trustees of Bulkeley School, the plaintiff sought to recover statutory interest

on overpaid federal taxes. As in the instant case, the Government argued that the district court

lacked subject matter jurisdiction. The court rejected the Government's argument, stating:

> The government has offered no authority for its position either in
> the legislative history of Section 1346(a)(1) or in the case law interpreting
> that provision . . . . Moreover, as the government properly concedes, the
> court in Triangle Corporation v. United States, 592 F. Supp. 1316,
> modified, 597 F. Supp. 507 (D. Conn. 1984) (Dorsey, J.), held that 28
> U.S.C. § 1346(a)(1) vests the federal district courts with jurisdiction over
> suits to recover interest on federal tax refunds. See also Draper v. United
> States, 62-2 U.S.T.C. *para* 9697 (E.D. Wash. 1962) (same).
>
> It is clear that the plaintiff is seeking to recover an "internal-
> revenue tax alleged to have been erroneously or illegally assessed or
> collected" as is permitted by Section 1346(a)(1). The Congress, by
> requiring the government to pay interest on tax overpayments, see 26
> U.S.C. § 6611, implicitly recognized that refunds of taxes overpaid in
> previous years must be appropriately adjusted to reflect the time value of
> money . . . . A taxpayer has not received a full refund of "erroneously . . .
> collected" taxes until he has recovered not only the nominal amount of the
> collection but also an amount of interest that will compensate him for the
> loss of the use of his money between the time that he paid the tax and the
> time that he received the refund.
>
> Finally, a contrary result would effectively deprive the federal
> district courts of jurisdiction over all tax refund suits in which the taxpayer
> may recover interest in excess of $10,000. It is unlikely that the Congress
> would have enacted sub silentio so significant a restriction on the tax
> jurisdiction of the federal district courts.

628 F. Supp. at 803 (emphasis added) (citations and footnote omitted).

Similarly, the court in Triangle Corp. rejected the Government's contention that a

claim for the recovery of Section 6611 Overpayment Interest could not be brought in district

court. The court stated:

> Although § 1346(a)(1) does not expressly state that district courts shall have jurisdiction over actions to recover only interest on a refund, it must be so interpreted in order to provide a forum in which to enforce the right provided by Section 6611. Otherwise, the IRS could deny taxpayers interest to which they are entitled by simply refunding the overpayment without interest, and thwart any court action to collect the interest on the jurisdictional challenge made here. The government does not contest the right to interest created by Section 6611, but it offers no suggestion as to the forum in which such right can be enforced. The government cites no authority for its position, nor did the court's independent research uncover any such authority. If neither the district court nor the Untied States Claims Court (which has concurrent jurisdiction in tax matters, § 1346(a)(1)) could entertain a suit for interest, then the taxpayer would appear, as plaintiff alleges, effectively to be deprived of the right to interest. Congress, in enacting 28 U.S.C. § 1346(a)(1), could not reasonably have intended to leave taxpayers with no forum in which to enforce the substantive rights granted by Section 6611.

592 F. Supp. at 1317. The court concluded by noting:

> If district courts have unchallenged jurisdiction over suits for refunds, it is illogical to argue that there is no jurisdiction over suits to recover only interest incident to the refund.

Id. at 1318.

In Doolin v. United States, the District Court for the Northern District of

New York reached the same conclusion, finding that it had subject matter jurisdiction

over suits "regarding the interest required by Congress to be paid on tax overpayments

under 28 U.S.C. § 6611 . . . ."[4]  Similarly, in the General Motors and Draper cases, the

district courts expressly held that section 1346(a)(1) granted them jurisdiction over suits

---

[4]    Although the Doolin case initially involved a claim for recovery of the tax overpayment and the interest thereon, the tax overpayment was refunded by the IRS and the case proceeded only on the dispute over the taxpayer's claim for interest.

5

claiming solely that the plaintiffs were entitled to a refund of section 6611 overpayment interest. General Motors, 389 F. Supp. at 246; Draper, 1962 U.S. Dist. LEXIS 4982, at *1, 5-6.

In addition, numerous other appellate and district courts have decided cases in which the plaintiff's only claim was one for the recovery of Section 6611 Statutory Interest without ever raising the issue of subject matter jurisdiction. See, e.g., Godfrey v. United States, 997 F.2d 335 (7th Cir. 1993); Phico Group, Inc. v. United States, 692 F. Supp. 437 (M.D. Pa. 1988); Barry v. United States, 570 F. Supp. 176 (N.D. Ill. 1983); Citadel Indus., Inc. v. United States, 314 F. Supp. 245 (S.D.N.Y. 1970); Universal Pictures Co. v. United States, 345 F.2d 1002 (2d Cir. 1965) (interest under 26 U.S.C. § 3771, which was subsequently reenacted as § 6611); Manee v. United States, 97 F. Supp. 993 (S.D.N.Y. 1951) (same). Because federal courts are obligated to raise and consider *sua sponte* their own subject matter jurisdiction, see, e.g., FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31 (1990); Norris v. Schotten, 146 F.3d 314, 324 n.5 (6th Cir. 1998), these decisions provide strong additional support for jurisdiction in the district courts to adjudicate claims for statutory interest.

The reason that suits for the recovery of statutory interest fall within the jurisdictional grant of Section 1346(a)(1) is both simple and compelling. When a taxpayer overpays his taxes, the government enjoys the use and benefit of the overpayment. The purpose of Section 6611 is to make the taxpayer whole by recognizing the time value of money. Godfrey, 997 F.2d at 337-38. The payment of interest under Section 6611 is mandatory. See 26 U.S.C. § 6611(a) ("interest *shall* be allowed and paid upon any overpayment in respect of any internal revenue tax") (emphasis added). Thus, because of the time value of money, to fully

6

refund erroneously collected taxes, the recovery contemplated under 1346(a)(1) must include the interest owed by the government on the principal tax and deficiency interest overpaid.

The Government's half-hearted attempt to distinguish several of the above-cited authorities is unavailing. For example, the Government purports to "distinguish" the decision in the Triangle Corp. case by asserting that the judge was unaware of the existence of the Federal Court of Claims as a forum that was available for the taxpayer. In fact, the Triangle Corp. court expressly acknowledged the concurrent nature of its jurisdiction with the Court of Claims under Section 1346(a)(1). 592 F. Supp. at 1317. Moreover, when the IRS asked the Triangle Corp. court to reconsider its ruling, asserting then – as it does here – that the court overlooked the Claims Court's jurisdiction, the court expressly held that, even assuming that 28 U.S.C. § 1491(a)(1) also granted to the Claims Court jurisdiction over suits solely claiming Section 6611 Overpayment Interest, its jurisdiction remains concurrent. 597 F. Supp. at 508-09.

Likewise, the Government mischaracterizes the decision in Trustees of Bulkeley School in stating that the court mistakenly believed that acceptance of the Government's argument would deprive district courts of jurisdiction over all refund suits where interest in excess of $10,000 was claimed. In fact, the court's statement in this regard was made *in response to the IRS's argument* that district courts could exercise jurisdiction over section 6611 interest claims only under 1346(a)(2), i.e., when the claim was for less than $10,000 in interest.[5]

---

[5]     Contrary to the Government's suggestion that in cases where claims for refund of both principal and interest are made, 28 U.S.C. § 2411 grants subject matter jurisdiction to the district courts over the overpayment interest portion of the suit, courts regularly cite only to section 1346(a)(1) as the basis of their subject matter jurisdiction. See, e.g., Shell Petroleum, Inc. v. United States, 996 F. Supp. 361, 362 (D. Del. 1997); McKitrick v. United States, 373 F. Supp. 471 (S.D. Ohio 1974); Hagood v. United States, 144 F. Supp. 782, 783, 786 (D. Wyo. 1956).

Further, the right to interest under section 2411 is conditioned on obtaining a "judgment ... against" the United States. 28 U.S.C. § 2411. If the Government were correct, a court would *(con't)*

Moreover, the Government conveniently ignores the court's primary reason for holding that jurisdiction is conferred by Section 1346(a)(1) – that the taxpayer has not received a full refund of the taxes "erroneously . . . collected" until he has recovered both the nominal amount of the collection and interest to compensate for the time value of money. 628 F. Supp. at 803.

The Government's reliance on Alexander v. Proudfoot, 454 F.2d 1379 (Ct. Cl. 1972), to supports its jurisdictional argument is misplaced. That case had nothing whatsoever to do with a claim for Section 6611 Overpayment Interest. The decision contains no discussion of subject matter jurisdiction under Section § 1346(a)(1) in the district courts.[6]

Nor does the decision in Cleveland Chair Co. v. United States, 526 F.2d 497 (6th Cir. 1975), provide any support for the Government's argument against jurisdiction. That case did not involve a claim for refund of Section 6611 Overpayment Interest. Rather, the case involved a claim that certain Treasury Notes posted as security for a judgment of the tax court had been negligently handled by federal officials when they failed to convert or reinvest the Notes upon their maturity.

The unpublished decision in Amoco Production Co. v. United States, 1988 U.S. Dist. LEXIS 954 (N.D. Ill. Feb. 4, 1988), likewise does not support the Government's claim.

---

not be able to determine whether it had jurisdiction over the overpayment interest claim until *after* it makes the substantive determination of whether the taxpayer has overpaid the tax principal. Clearly subject matter jurisdiction cannot depend on the suit's outcome.

[6]    Alexander involved the question of whether the statute of limitations barred the plaintiff from recovering deficiency interest that it had previously paid to the government as part of a tax overpayment. The court held that the taxpayer failed to file a timely claim for refund pursuant to 26 U.S.C. § 6511. Id. at 1385. In *dicta* comparing deficiency interest with section 6611 overpayment interest, the court stated only that overpayment interest was subject to a different statute of limitations. Id. at 1384.

Unlike our case, the taxpayer in Amoco failed to file an administrative claim with the IRS before bringing suit to recover statutory interest. Because the filing of an administrative claim is a jurisdictional prerequisite to a section 1346(a)(1) cause of action, the court found that it could not exercise jurisdiction. While recognizing the validity of the Triangle Corp. and Trustees of Bulkeley Schools cases, to preserve some legal remedy for the taxpayer, the court performed a strained analysis in order to transfer the case to the Claims Court, which had previously indicated it would not require a prior administrative claim to consider a statutory interest suit.[7] To the extent that Amoco conflicts with the authority cited herein, it is an aberrant decision with flawed logic that should be disregarded.

In sum, because this Court has subject matter jurisdiction over this suit pursuant to section 1346(a)(1), the Motion to Dismiss should be denied.

## B.    Subject Matter Jurisdiction Is Granted Pursuant To 28 U.S.C. § 1340 And 26 U.S.C. § 6611.

Section 1340 of Title 28, in conjunction with Section 6611 of Title 26, provides this Court with a separate basis for subject matter jurisdiction over this suit. Section 1340 provides, in relevant part:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue . . . except matters within the jurisdiction of the Court of International Trade.

---

[7]    To reach this result, the court stated that the claim for overpayment interest did not fall under Section 1346(a)(1) because the interest had not been "previously assessed" and the interest could not be a "recovery" because it is not a "return of sums already paid." This reasoning is flawed. First, it ignores that Section 1346(a)(1) is not limited to refunds of amounts erroneously "assessed," but also includes amounts wrongfully "collected." Further, as expressly recognized in Trustees of Bulkeley School and other decisions, the overpayment interest *is* part of the sum paid. The taxpayer's recovery is incomplete in the absence on an award of interest recognizing the time value of money.

9

The instant case asserts a cause of action arising under the internal revenue laws of the United States and therefore is within the jurisdictional scope of 28 U.S.C. § 1340. It has been recognized that, although Section 1340 "is only a grant of general jurisdiction, and not a waiver by the United States of its sovereign immunity, it does authorize proceeding in which the United States waives its immunity under some other statutory provision." Yannicelli v. Nash, 354 F. Supp. 143, 149 (D. N.J. 1972); accord Broadwell v. United States, 234 F. Supp. 17, 18 (E.D. N.C. 1964); Quinn v. Hook, 231 F. Supp. 718, 719 (E.D. Pa. 1964); Bartell v. Riddell, 202 F. Supp. 70, 73-74 (S.D. Cal. 1962).

Here, that "other statutory provision" is 26 U.S.C. § 6611. Interest cannot be awarded against the United States unless it gives its consent to pay it. Library of Congress v. Shaw, 478 U.S. 310, 311 (1986). Congress waives the United States' sovereign immunity by expressly requiring interest to be paid. See, e.g., International Bus. Mach. Corp. v. United States, 201 F.3d 1367, 1370, 1374 (Fed. Cir. 2000).

By expressly requiring in Section 6611 the refund of interest on tax overpayments, the United States has statutorily waived its sovereign immunity for the interest claimed in this suit. Marsh & McLennan Co., Inc. & Subsidiaries v. United States, 2001 U.S. Claims LEXIS 150, at * 24 (Fed. Cl. Aug. 6, 2001) (attached as Exhibit 2 hereto); Triangle Corp., 592 F. Supp. at 1317, 1318 (section 6611 creates the substantive right to interest and section 1340 provides a forum for enforcement of that right, thus sovereign immunity has been waived); Selman v. United States, 733 F. Supp. 1444, 1445 (W.D. Okla. 1990) (the substantive rights granted by section 6611, in combination with sections 1340 and 1346(a)(1), give the district courts subject matter jurisdiction to award statutory interest on tax overpayments); Murphy v. United States, 78 F. Supp. 236, 239 (S.D. Cal. 1948) (in I.R.C. Section 3771(a),

10

which was reenacted as section 6611(a), the United States has consented to be sued for the

interest on tax overpayments); cf. Brown & Williamson, Ltd. v. United States, (section 6611

creates the right to interest upon refunded taxes).

    As a result, 28 U.S.C. § 1340 and 26 U.S.C. § 6611 provide this Court with a

separate and independent basis for subject matter jurisdiction over this suit.

### CONCLUSION

    The Motion to Dismiss should be denied.


       Respectfully submitted,


       David G. Holcombe by Amy S.

       David G. Holcombe (0025768) *Trial Counsel* Harad
       BAKER & HOSTETLER LLP
       312 Walnut Street
       Suite 2650
       Cincinnati, Ohio 45202
       (513) 929-3400

       Paul P. Eyre (0025756)
       William M. Toomajian (0025740)
       Thomas R. Lucchesi (0025790)
       BAKER & HOSTETLER LLP
       3200 National City Center
       Cleveland, Ohio 44114-3485
       (216) 621-0200

       Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

A copy of the foregoing Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss was served by first-class U.S. Mail, postage prepaid, upon Stacey S. Hallett, attorney for the defendant, at Tax Division, Department of Justice, P.O. Box 55, Ben Franklin Station, Washington, D.C. 20044, on this 1st day of October, 2001.

David N. Holcombe by Amy L. Hanard
One of the Attorneys for Plaintiff

E:\Rl3825\95070\00020\Pleadings\Opposition to MTD-2.doc. 10/01/01, 3:55 PM

Carrie Draper and Seattle-First National Bank, Co-Executors, Estate of Fred Draper, deceased, and Carrier
Draper, Plaintiffs v. United States of America, Defendant.
No. 2224.

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT WASHINGTON, NORTHERN DIVISION

1962 U.S. Dist. LEXIS 4982; 62-2 U.S. Tax Cas. (CCH) P9697;10 A.F.T.R.2d (RIA) 5446

August 17, 1962

CORE TERMS: transmitted, federal income tax, income tax, per annum, tax liabilities, Conclusions of Law, paid
interest, tax shown, set forth, accountant

OPINIONBY: [*1]

POWELL

OPINION: Findings of Fact and Conclusions of Law

POWELL, District Judge: The above entitled case was
heard before the Honorable Charles L. Powell, United
States District Judge, sitting in Spokane, Washington, on
the 18th day of June, 1962.   The Plaintiffs being
represented by their attorney, Francis J. Butler and the
defendant being represented by Bruce A. Koppe,
Department of Justice, Washington, D.C. The Judge,
having heard the testimony and examined the exhibits
and the stipulated facts and trial memorandum submitted
on behalf of both parties, and being fully advised on the
premises, finds as follows:

1. This action was brought under Title *28, U.S. Code,
Section 1346*(a)(1) and under the Internal Revenue Codes
of 1939 and 1954.

2. The Plaintiffs herein were, at all times material
hereto, husband and wife and citizens of the United
States, residing in Colville, County of Stevens, State of
Washington. Plaintiff Fred Draper died on or about the
15th day of April, 1962, and Carrie Draper and the
Seattle-First National Bank were named as co-executors
of the estate.

3. For the taxable years 1944 through 1949, Plaintiffs
herein filed timely original income tax returns[*2] with
the Collector of Internal Revenue for the District of
Washington and paid the tax shown as due thereon.  For
the taxable years 1944 through 1947, separate returns
were filed and joint returns were filed for the taxable
years 1948 and 1949.

4. Subsequent to the time that the Plaintiffs filed their
federal income tax returns and on or before Thanksgiving
of 1949, Revenue Agent C. J. Tillman commenced
investigation of the Plaintiffs' tax affairs.  Assertions of
additional tax for the taxable years 1944 through 1949
were made by the Internal Revenue Service, and
Plaintiffs' accountants, based upon the Revenue Agent's
figures, prepared amended federal income tax returns
which were signed and certified to by the Plaintiffs for
each of the taxable years 1944 through 1949, inclusive.

5. On or about June 13, 1951, the Plaintiffs transmitted
the amended federal income tax returns for the years
1944 through 1949 to the District Director of Internal
Revenue in Tacoma, Washington, together with checks
for the additional tax shown on the said returns in the
amount of $120,591.21.

6. The amended income tax returns transmitted to the
District Director of Internal Revenue, together[*3] with
the checks set forth above, were physically accepted and
were not returned to the Plaintiffs.  The returns were in
the possession of the District Director of Internal
Revenue from the date of filing until the date of the trial
of this case except during such time as they were in the
possession of the Tax Court of the United States.
Neither Petitioners nor their accountant were notified that
the amended income tax returns were not accepted as
filed.

7. The checks in the total amount of $120,591.21,
transmitted to the District Director of Internal Revenue
under date of June 13, 1951, were cashed under date of
July 31, 1951 and deposited to the credit of the Treasurer
of the United States.   The checks all contained the
following notation placed on the said check by the
Collector of Internal Revenue of the District of
Washington: "This check is in payment of an obligation



to the United States and must be paid at par. No protest."

8. The $120,591.21 transmitted to the District Director of Internal Revenue as set forth herein was placed by the said Director in a suspense account in the District Director's office (Unclassfied 9-B account). The decision not to assess the amount[*4] of $120,591.21 was solely that of the District Director of Internal Revenue and he was given no such instructions from the Plaintiffs.

9. Plaintiffs' additional tax liabilities for the taxable years 1944 through 1949 were the subject of a decision by the Tax Court of the United States filed May 29, 1959, and pursuant to that decision and the applicable law, the sum of $48,758.26 was applied in satisfaction of the Plaintiffs' additional tax liabilities for the taxable years 1944 through 1949. The sum of $48,758.26 was taken entirely from the $120,591.21 held by the District Director. The Tax Court decision is reported at *32 T.C. 545*.

10. The sum of $71,832.95 which remained with the District Director after application of the sum of $48,758.26 was returned to the Plaintiffs on or about the 12th day of April, 1960.

11. The District Director of Internal Revenue did not charge Plaintiffs interest on the deficiency due under the Tax Court proceeding from the date the amount of $120,591.21 was transmitted to the District Director together with the amended federal income tax returns.

12. On or about the 7th day of October, 1960, Plaintiffs filed with the District Director[*5] of Internal Revenue in Tacoma, Washington, a claim for interest due them on the amount returned to them on or about July 15, 1960. The claim was predicated on the ground that the exeess of the $120,591.21 payment, made to the District

Director June 13, 1951 over the amount ultimately determined to be additional tax liability of the Plaintiffs for the years then in question, constituted a payment upon which interest was due them computed at the rate of 6 percent per annum in accordance with law from the date of the payment until thirty days prior to the date of the refund to them of the excess.

13. Plaintiffs' claim for refund filed as set forth herein was rejected by the Commissioner of Internal Revenue under date of March 3, 1961, and Plaintiffs filed a complaint in the Federal District Court seeking the interest set forth in the said refund claim.

14. The Plaintiffs were entitled to be paid interest at the rate of 6 percent per annum, as is provided by law, on the amount of $71,832.95 from the date of remittance, i.e., June 13, 1951, until thirty days prior to the time the amount was returned to them, i.e., March 12, 1960.

Conclusions of Law

From the foregoing facts, [*6] the Court concludes as follows:

1. The Court has jurisdiction of this controversy and of the Plaintiffs hereto.

2.The Plaintiffs are entitled to be paid interest at the rate of 6 percent per annum, as provided by law, on the sum of $71,832.95 from June 13, 1951 to a period not less than thirty days prior to April 12, 1960, the date upon which the said amount was returned to the Plaintiffs.

3. The Plaintiffs are entitled to judgment against the United States in the amount of $37,700.33 together with interest as allowable by law.

MARSH & McLENNAN COMPANIES, INC. and SUBSIDIARIES, n1Plaintiff, v. THE UNITED STATES, Defendant. n1 Despite defendant's contention that the spelling of the case name on the complaint is immutable, the court granted plaintiff's motion to change the style of the caption to reflect the accurate spelling of plaintiff.

No. 00-205T

UNITED STATES COURT OF FEDERAL CLAIMS

50 Fed. Cl. 140; 2001 U.S. Claims LEXIS 150; 2001-2 U.S. Tax Cas. (CCH) P50,575; 88 A.F.T.R.2d (RIA) 5381

August 6, 2001, Filed

DISPOSITION: [*1] Defendant's motion for
summary judgment granted, and plaintiff's cross-
motion for summary judgment denied.
CASE SUMMARY

PROCEDURAL POSTURE: Plaintiff taxpayer and
defendant Internal Revenue Service filed cross-
motions for summary judgment on the issue of
whether the taxpayer was entitled to interest,
pursuant to 26 U.S.C.S. § 6611 (b)(1) on
overpayments of federal income tax for two years to
the date on which each overpayment was applied to
satisfy a later-arising liability, or to the date on which
the tax was due for the year generating the liability.

OVERVIEW: The taxpayer overpaid its federal
income taxes for the years 1985 and 1986. It was
later determined to have additional tax liability for
the years 1987 and 1988. The Internal Revenue
Service (IRS) applied the overpayment credits
against the later two tax years, but did not actually
determine the additional liability for those two years
until later years. The taxpayer argued that, under 26
U.S.C.S. § 6611 (b)(1), it was entitled to a refund of
interest for the "use" of its overpaid funds until the
dates the additional liabilities were determined. The
IRS countered that the interest should only be
computed to the dates when the tax for the years
with deficiencies (1987 and 1988) became due,
regardless of when the deficiency was calculated.
The court found cases supporting both arguments, but
decided the IRS interpretation was more rational
since it fixed the "due date" with certainty. The court
derided the IRS's throw-in argument that sovereign
immunity had not been statutorily waived as to the
interest, since § 6611( b)(1) expressly required the
refund of interest, and IRS had already paid some of
the interest.

OUTCOME: The internal Revenue Service's (IRS)
motion for summary judgment was granted, and the
taxpayer's denied, because the IRS's interpretation of
the "due date" provision of the applicable statute
made results logical and predictable, while the
taxpayer's interpretation made the interest calculation
dependent on ministerial acts of the agency.

CORE TERMS: overpayment, statutory language,
tax liability, ending, operational, unpaid,
overpayment credit, refunded, calculation, credited,
extension of time, regulation, refund, interpreting,
debit, congressional intent, tax obligation, plain
language, outstanding, compensate, remainder,
comports, owed, summary judgment, calculated,
computed, internal revenue tax, payment of interest,
sovereign immunity, allowable interest

CORE CONCEPTS -

Civil Procedure: Summary Judgment: Summary
Judgment Standard
Summary judgment is proper when there are no
genuine issues of material fact in dispute and the
moving party is entitled to judgment as a matter of
law. Ct. Fed. Cl. R. 56(c).

Tax Law: Federal Income Tax Computation
Tax and interest payments are creatures of statute,
and such statutory provisions are to be given their
plainest reasonable meaning, in implementation of
the discernable intent of Congress.

Tax Law: Federal Tax Administration & Procedure:
Tax Liabilities & Credits: Interest (IRC secs. 6601-
6631)
See 26 U.S.C.S. § 6611 (b)(1).

Governments: Legislation: Construction &
Interpretation
A plain-meaning interpretation that discounts part of
the language it purports to interpret is untenable.
Statutory interpretation is a "holistic endeavor" that



requires consideration of a statutory scheme in its entirety. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme.

Tax Law: Federal Tax Administration & Procedure: Tax Liabilities & Credits: Interest (IRC secs. 6601-6631)

At least with respect to interest owed on a tax deficiency under *26 U.S.C.S. § 6601*, the Court of Federal Claims held that absent a clearly expressed legislative intent to the contrary, the court must ordinarily regard the plain language of a statute as conclusive.

Tax Law: Federal Tax Administration & Procedure: Tax Liabilities & Credits: Interest (IRC secs. 6601-6631)

Consistent with the "use of money" principle, interest on deficiencies may be charged to compensate the government for funds which it did not possess but which it rightfully should have possessed.

Tax Law: Federal Tax Administration & Procedure: Tax Liabilities & Credits: Interest (IRC secs. 6601-6631)

When Congress intends to deny interest on income tax refunds, it explicitly so provides.

Tax Law: Federal Tax Administration & Procedure: Tax Liabilities & Credits: Interest (IRC secs. 6601-6631)

The United States Supreme Court, in Manning, decided that a taxpayer was not entitled to a refund of assessed interest. From the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax. For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States.

Tax Law: Federal Tax Administration & Procedure: Tax Liabilities & Credits: Interest (IRC secs. 6601-6631)

The factual "operational events" in Manning gave rise to a tax obligation to the Government. Thus, the Government had the right to the use of funds used to pay the tax obligation. That right remained notwithstanding a later adjustment to the tax obligation that eliminated the obligation itself.

Tax Law: Federal Tax Administration & Procedure: Tax Liabilities & Credits: Interest (IRC secs. 6601-6631)

The Court of Federal Claims contrasted Manning with the situation of the taxpayer in Martin-Marietta. In Martin-Marietta, the court allowed the taxpayer to recover interest on its overpayments, because no "operational events" had given the Government the right to the funds. Instead, it was not until an administrative decision subsequent to the overpayment year that the question of the taxpayer's liability was decided. Thus, the Government could not claim that it had the legal right to the use of the taxpayer's overpayment funds.

Tax Law: Federal Tax Administration & Procedure: Tax Liabilities & Credits: Interest (IRC secs. 6601-6631)

The Federal Circuit has held that Revenue Rulings have no binding effect on the Court of Federal Claims. Revenue Rulings are not accorded a presumption of correctness, but must be analyzed for consistency with the statute. However, they are entitled to some consideration and carry some weight, especially when the statutory language is considered ambiguous.

Tax Law: Federal Tax Administration & Procedure: Tax Liabilities & Credits: Interest (IRC secs. 6601-6631)

The "due date" as defined by *26 C.F.R. § 301.6611-1(h)(2)* is the last day fixed by law or regulation for the payment of the tax.

Tax Law: Federal Tax Administration & Procedure: Tax Liabilities & Credits: Interest (IRC secs. 6601-6631)

See *26 U.S.C.S. § 6611* (a).

Tax Law: Federal Tax Administration & Procedure: Tax Liabilities & Credits: Interest (IRC secs. 6601-6631)

A claim of sovereign immunity is irrelevant where the dispute concerns not whether interest runs against the United States but how the interest is to be calculated.

HEADNOTES: Taxes; period of interest for amounts overpaid as applied to tax liability arising in a subsequent year; *I.R.C. § 6611* - Interest on Overpayments.

COUNSEL: Neal J. Block, Chicago, IL, for plaintiff. A. Duane Webber, Baker & McKenzie, Washington, DC, of counsel.

W.C. Rapp, Washington, DC, with whom was Acting Assistant Attorney General Claire Fallon, for defendant.

JUDGES: Christine Odell Cook Miller, Judge.

OPINIONBY: Christine Odell Cook Miller

OPINION:
MILLER, Judge.

This case is before the court after argument on cross-motions for summary judgment. The issue for decision is whether the taxpayer is entitled to interest on overpayments of federal income tax for 1985 and 1986 to the date on which each overpayment was applied to satisfy a later-arising liability or to the date on which the tax was due for the year generating the liability.

FACTS

The facts are not disputed. Marsh & McLennan Co., Inc. ("plaintiff"), overpaid its 1985 federal income taxes by $275,139.00 (the "1985 Overpayment") and overpaid its 1986 federal income taxes by $3,412,083.00 (the "1986 Overpayment"). The 1985 Overpayment eventually was credited to plaintiff's 1987 tax liability. This credit was reflected in an Internal Revenue Service ("IRS") [*2] Transcript which was generated on April 11, 1994 (the "Transcript"). The Transcript shows that interest on the 1985 Overpayment was computed using an ending date of April 15, 1988. The credit itself was not applied to the 1987 tax liability until March 15, 1989. Plaintiff asserts that its 1987 tax account did not go into "debit" status until March 15, 1989. Plaintiff claims that it was this date (March 15, 1989) that should have been the ending date for the calculation of interest on the 1985 Overpayment.

Similarly, the 1986 Overpayment was credited to plaintiff's 1988 tax liability. The Transcript reveals that interest on the 1986 Overpayment was computed using two end dates: April 15, 1988, for the amount of the 1986 Overpayment credited to the 1987 account and April 15, 1989, for the amount of the 1986 Overpayment offset to the 1988 account. Plaintiff again takes the position that its 1988 tax account did not go into "debit" status until September 15, 1989. It is this date that plaintiff designates for calculating interest on $1,074,541.00 of the 1986 Overpayment. Plaintiff's 1988 tax account again went into "debit" status on March 15, 1990, on which date the remaining portion[*3] of the 1986 Overpayment was credited to the 1988 tax account.

According to plaintiff, interest should have been calculated to September 15, 1989, and March 15, 1990, for the respective amounts of the 1986 Overpayment, whereas defendant holds that the April 15 ending dates for the calculation of interest are proper. n2

> n2 Defendant actually argues that the ending dates should have been one month earlier, i.e., March 15, for each of the respective years, and that plaintiff has received excess interest payments, see Def.'s Br. filed Dec. 6, 2000, at 4 n.3. However, defendant acknowledges that the statute of limitation bars recovery of any overpayment.

DISCUSSION

1. Summary judgment

Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. See RCFC 56(c). The parties agree on the amounts of income tax overpayments for 1985 and 1986, the taxable years to which the overpayments were applied, and the [*4] date on which the accrual of allowable interest on the overpayment begins under *section 6611 of the Internal Revenue Code*. See *26 U.S.C. ("I.R.C.") § 6611*(b)(1) (2000). The only issue before the court is the date on which the accrual of allowable interest ends.

2. Ending date for interest on overpayments

" Tax and interest payments are creatures of statute, and such statutory provisions are to be given their plainest reasonable meaning, in implementation of the discernable intent of Congress." *Shriners Hospital for Crippled Children v. United States, 862 F.2d 1561, 1563 (Fed. Cir. 1988)* (footnote omitted).

*I.R.C. § 6611*, entitled "Interest on Overpayments," provides as follows:

(b) Period.--Such interest shall be allowed and paid as follows:

(1) Credits.--In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken.

In advancing their respective interpretations of the phrase "due date of the amount against which the

credit is taken," both parties ground their arguments on the plain meaning of the statutory[*5] language.

Defendant focuses on the "due date" in *I.R.C. § 6611(b)(1)*, arguing that "due date" is a term defined by *Treas. Reg. § 301.6611-1(h)(2)* (as amended in 1994), as "the last day fixed by law or regulation for the payment of the tax (determined without regard to any extension of time)." Corresponding with this definition, defendant posits that the "due date" for overpayment of interest is the original due date of the return for the period to which the overpayment amount was credited. For corporate, calendar-year taxpayers like plaintiff, that date is the 15th day of March following the close of the calendar year. *I.R.C. § 6072(b)*. Defendant implores the court to "do what the statute says," Transcript of Proceedings, Marsh & McLennan Co. v. United States, No. 00-205T, at 24 (June 19, 2001), and import into *I.R.C. § 6611(b)(1)* the "due date" definition derived from the Treasury Regulation.

Plaintiff rejoins that *Treas. Reg. § 301.6611-1(h)(2)* only provides that "in general" the term "due date" means "the last day fixed by law or regulation for[*6] the payment of tax (determined without regard to any extension of time) and not the date on which . . . [the IRS] makes demand for the payment of the tax. " Plaintiff argues that the latter portion of the Treasury Regulation (which defendant failed to quote) indicates that section 301.611-1(h)(2) is concerned primarily with distinguishing between (i) the date on which tax is due and (ii) the date on which the IRS notifies the taxpayer that the tax is due. Reading section 301.611-1(h)(2) as only a general rule, plaintiff dismisses it as not purporting to apply to the situation at hand.

The underlying flaw in defendant's reliance on the Treasury Regulation and *I.R.C. § 6072(b)* is the explicit language contained in the statute. Given the existence of *I.R.C. § 6072(b)*, it is manifest that Congress knew how to define "due date" as the 15th day of March following the close of the taxable year. Had Congress intended such a result with respect to the ending date for overpayment interest, it could have chosen explicit language to do so and included that language in *I.R.C. § 6611(b)(1)*. More importantly, according to[*7] plaintiff, defendant's focus on "due date" ignores the remainder of the statutory language in *I.R.C. § 6611(b)(1)* which requires interest to the "due date of the amount against which the credit is taken."

Plaintiff's reliance on the plain language of *I.R.C. § 6611(b)(1)* suffers from a similar infirmity. Plaintiff

focuses on one short phrase taken from *I.R.C. § 6611(b)(1)* -- in this case "the amount against which the credit is taken." Plaintiff argues that *Treas. Reg. § 301.611*-(h)(2), is concerned with the "due date of the return," not the "due date of the amount." Plaintiff reasons that there can be no "amount" against which the overpayment credit is taken until the IRS determines that an amount is due and unpaid. The IRS determined in this case that an amount was due and unpaid on the due date of the return against which the credit was applied. It is the actual date on which the credit amount was applied to a tax liability, i.e., when the account went into "debit" status, that plaintiff argues is the "due date" under *I.R.C. § 6611(b)*. n3 Plaintiff also[*8] links this argument to another provision of the Internal Revenue Code -- *I.R.C. § 6402(a)*, which authorizes the IRS to credit an overpayment of one tax liability, including interest allowed thereon, "against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." Because *I.R.C. § 6402(a)* authorizes the overpayment credit and the language itself predicates the overpayment credit on the existence of an outstanding "liability," plaintiff construes this provision as supporting its position.

> n3 In the instant case, the date on which the 1985 overpayment credit was applied to an outstanding tax liability is March 15, 1989. The 1986 overpayment credit was applied to two separate outstanding tax liabilities on September 15, 1989, and March 15, 1990.

Both parties wrest too much congressional intent from a snippet of statutory language. Plaintiff's argument ignores the remainder of the cited phrase. Plaintiff seeks to interpret[*9] "amount against which the credit is taken" without full regard to the phrase "due date." Under plaintiff's argument, the "due date" becomes wholly dependent on the IRS's accounting procedures, which have not been shown to be governed by the statutory language of *I.R.C. § 6611(b)(1)*. In fact, *I.R.C. § 6611(b)(1)* does not instruct when the "amount against which the credit is taken" becomes "due." That the statute concerned with the timing of overpayment interest would be silent as to when that overpayment interest ended is a peculiar circumstance. Plaintiff cannot point to any clear congressional intent for such an unpredictable result, instead seeking to minimize the impact of the phrase "due date." However, a plain-meaning interpretation that discounts part of the language it

purports to interpret is untenable. "Statutory interpretation is a 'holistic endeavor' that requires consideration of a statutory scheme in its entirety." *Vectra Fitness, Inc. v. TNWK Corp., 162 F.3d 1379, 1383 (Fed. Cir. 1998)* (quoting *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371, 98 L. Ed. 2d 740, 108 S. Ct. 626 (1988)).*[*10] "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . ." *United Sav., 484 U.S. at 371.*

The parties' arguments, purblind as they may be, represent polar efforts at interpreting statutory language which is, at best, not a model of clarity, and neither interpretation yields a satisfactory result. In this instance the court turns to other available tools of statutory interpretation.

3. The "use of money" principle

Plaintiff claims that the "cornerstone" of the Internal Revenue Code's interest provisions is the "use of money" principle. Pl.'s Br. filed Feb. 5, 2001, at 12. Interest is charged to compensate one party for the time the other party had the use of its money. See, e.g., *Manning v. Seeley Tube & Box Co., 338 U.S. 561, 565-66, 94 L. Ed. 346, 70 S. Ct. 386 (1950).* Although both parties agree that the "use of money" principle is a tool that can be used to interpret a statutory requirement, they differ sharply as to the extent to which the principle should be applied in the case at bar.

Plaintiff relies primarily on *Avon Products, Inc. v. United States, 588 F.2d 342, 343 (2d Cir. 1978),*[*11] and *May Department Stores Co. v. United States , 36 Fed. Cl. 680 (1996),* to establish the "use of money" principle as the underlying concept behind the granting of interest on overpayments. The taxpayer's liability in Avon Products had been paid fully on the due date for payment, but subsequently became unpaid. Because the taxpayer was required to pay interest on this deficiency under *I.R.C. § 6601,* the court in Avon Products was concerned with determining when this interest should start to run: on the original due date for payment or on the date the liability subsequently became unpaid. The court settled on the latter date, holding that *I.R.C. § 6601* imposes interest "when a tax becomes both due and unpaid." *Avon Products, 588 F.2d at 344.* Although the court did not explicitly tie this analysis to the "use of money" principle, plaintiff argues that the decision reaffirms the principle by holding that interest "is intended only to compensate the Government for delay in payment of a tax. " *Id. at 343.*

Similarly, May Department Stores was concerned with the amount of interest [*12]owed by a taxpayer which originally filed returns reporting overpayments for the taxable years 1983 and 1984, but subsequently was found to be deficient with respect to those years. The Court of Federal Claims held  that, at least with respect to interest owed on a  tax  deficiency under *I.R.C. § 6601,* "absent a clearly expressed legislative intent to the contrary, this court must ordinarily regard the plain language of the statute as eonclusive." *May Dep't Stores, 36 Fed. Cl. at 688.* The court concluded that interest was due from the date that the taxpayer's payment was deficient. The court specifically addressed the "use of money" prineiple, holding that "consistent with the 'use of money' principle followed in both Manning and Avon Products, interest on deficiencies may be charged to compensate the government for funds which it did not possess but which it rightfully should have possessed." *Id. at 689* (footnote omitted).

These cases establish the "use of money" principle, but, as defendant cogently argues, they do so while interpreting a provision of the Internal Revenue Code that is not at issue in this case ( *I.R.C. § 6601*[*13] ), and deal with deficiency (or underpayment) interest, not overpayment interest. On these grounds defendant discounts the "use of money" principle as the guide to determining the ending date for overpayment interest.

While these cases are distinguishable, they cannot be dismissed out of hand. This is especially true because "the Supreme Court has stressed the importance of symmetry in the payment of interest." *Brown & Williamson, Ltd. v. United States, 231 Ct. Cl. 413, 688 F.2d 747, 750 (Fed. Cir. 1982)* (citing *United States v. Koppers Co., 348 U.S. 254, 267, 99 L. Ed. 302, 75 S. Ct. 268 (1955); Manning, 338 U.S. at 568).* Moreover, in Brown & Williamson, the Government based its position regarding the overpayment of interest on the "use of money" principle.

In Brown & Williamson the taxpayer, a foreign corporation, had withheld income tax from 1975 to 1978 at a withholding rate of 15%. This rate satisfied the  tax  liability owed at that time. Pursuant to a treaty effective April 25, 1980, the  tax  rate was reduced to 5%. The reduced  tax  rate was made effective as of January 1, 1975. Taxpayer accordingly sought and received [*14]refunds of almost $17.5 million for the years 1975 to 1978. Taxpayer also sought interest from the original date of payment of the refunded  taxes.  The IRS ruled that interest was

due from the date the treaty went into effect. Thus, the Federal Circuit was required to interpret the "date of overpayment" in *I.R.C. § 6611(b)(1)*.

The Federal Circuit relied on the past practice of the IRS, the applicable Treasury Regulation, and the discernable congressional intent to conclude that the "date of overpayment" was "the date on which [the refunded tax ] originally was paid." *Brown & Williamson, 688 F.2d at 749.* Defendant argued against this conclusion, positing that "interest is payment for the use of money that [the Government] has in effeet borrowed from someone else and that if the possession of the money was valid, interest on it is not due when the money is refunded because of a subsequent event." Id. at 750. Had the Federal Circuit adopted this reasoning, this court's inquiry would be at end. However, the Federal Circuit formulated the issue as "involving the wholly different question of a taxpayer's right to recover interest upon taxes [*15] that initially were properly paid but that were refunded as a result of a subsequent retroactive change in the tax law." Id. at 751. Nevertheless, Brown & Williamson, like the other cases offered by the parties, is revelatory by way of analogy.

The Federal Circuit noted that "when Congress intends to deny interest on refunds, it explicitly so provides." Id. at 749. Although the instant case does not concern a refund, this point is well taken. Defendant eannot point to an explicit denial of interest after a given date in *I.R.C. § 6611(b)(1)*. Furthermore, defendant's out-of-hand rejection of the "use of money" principle in this case is tempered by the position that it took in Brown & Williamson. n4

> n4 Taken together, the above described cases demonstrate that the only rationale that informs the IRS's approach to the "use of money" principle is the maximization of tax revenue.

Ultimately, however, an examination of the cases applying the "use of money" principle leads to[*16] the conclusion that it should play no decisive role in this case.

In *Martin-Marietta Corp. v. United States, 189 Ct. Cl. 291, 418 F.2d 502 (1969),* the United States Court of Claims discussed the "use of money" principle and attempted to evoke a guiding rationale for its application. The eourt began with Manning, an underpayment interest case, noting that it "involved the question of whether interest on a properly

assessed tax deficiency is abated when the deficiency itself is extinguished by the carryback of a net operating loss sustained in a subsequent year." *Martin-Marietta, 189 Ct. Cl. at 303, 418 F.2d at 508.* The Supreme Court in Manning decided that the taxpayer was not entitled to a refund of the assessed interest, reasoning:

From the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax. For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States.

*Manning, 338 U.S. at 565-66* (eitations[*17] omitted). Interpreting this language, the Court of Claims in Martin-Marietta focused on the "operational events" creating tax liability. *Martin-Marietta, 189 Ct. Cl. at 304, 418 F.2d at 508.* The court concluded that the factual "operational events" in Manning had given rise to a tax obligation to the Government. Thus, the Government had the right to the use of those funds used to pay the tax obligation. This right remained notwithstanding a later adjustment to the tax obligation that eliminated the obligation itself. The conclusion followed because "the operational faet pattern necessary to fix the taxpayer's liability already was complete." *Id., 189 Ct. Cl. at 303-304, 418 F.2d at 508.*

The Court of Claims contrasted the Manning situation with that of the claimant in Martin-Marietta. In Martin-Marietta the court allowed the taxpayer interest on its overpayments, because no "operational events" had given the Government the right to the funds. Instead, it was not until an administrative decision subsequent to the overpayment year that the question of the taxpayer's liability was decided. Thus, the Government could not claim that[*18] it had the legal right to the "use of" the taxpayer's overpayment funds. *Id., 189 Ct. Cl. at 304, 418 F.2d at 508-509.*

These cases establish that the "use of money" principle cannot be applied as broadly as plaintiff advocates. In both Manning and Martin-Marietta, the courts were focused on whether the Government had a right to use the taxpayer's funds. The Martin-Marietta court answered this question by examining when the liability to the Government arose. In the instant case, no such analysis ean be undertaken as this case involves an overpayment that the IRS admittedly had the right to retain. While Manning and Martin-Marietta deal with the "use of money" principle generally, attempting to apply their

operational events analysis does not advance resolution of plaintiff's claims.

Plaintiff has painted its "use of money" argument with a broad stroke, arguing that the principle is the cornerstone of the tax code. Such an approach obscures the fact that the "use of money" principle has not been applied to fixing the end date for the calculation of overpayment interest. The court cannot base a ruling under *I.R.C. § 6611(b)(1)*[*19] on the "use of money" principle when neither the relevant caselaw nor the plain language of the statute supports plaintiff's argument.

4. Other tools of statutory interpretation

Both parties offer IRS Revenue Rulings in support of their respective positions. The Federal Circuit has held that Revenue Rulings have no binding effect on the Court of Federal Claims. *B.F. Goodrich Co. v. United States, 94 F.3d 1545, 1550 n.5 (Fed. Cir. 1996); Pacific Far East Line, Inc. v. United States, 211 Ct. Cl. 71, 93, 544 F.2d 478, 490 (1976).* Revenue Rulings are not accorded a presumption of correctness, but must be analyzed for consistency with the statute. *Estate of Sanford v. Connecticut, 308 U.S. 39, 52-54, 60 S. Ct. 51, 84 L. Ed. 20 (1939); United States v. Missouri Pac. R.R., 278 U.S. 269, 280, 73 L. Ed. 322, 49 S. Ct. 133 (1929).* However, "they are entitled to some consideration and carry some weight, especially when the statutory language is considered ambiguous." *Farmar v. United States, 231 Ct. Cl. 642, 655 n.12; 689 F.2d 1017, 1024 n.12 (1982),* rev'd on other grounds, *C.I.R. v. Engle, 464 U.S. 206, 78 L. Ed. 2d 420, 104 S. Ct. 597 (1984);*[*20] *Gino v. Commissioner, 538 F.2d 833, 835 (9th Cir.), cert. denied, 429 U.S. 979, 50 L. Ed. 2d 587, 97 S. Ct. 490 (1976).* Unfortunately, the cited Revenue Rulings do little to shed light on the statutory language.

Plaintiff relies on *Revenue Ruling 99-40, 1992-2 C.B. 441, 1999 IRB LEXIS 371,* which dealt with calculating deficiency (or underpayment) interest when the taxpayer elects to apply an overpayment of tax for one year to the following year's estimated taxes (a "credit elect"). The Revenue Ruling is concerned with "the manner in which interest on a subsequently determined deficiency is computed under [ *I.R.C.] § 6601(a)* when the taxpayer makes an election to apply an overpayment to the succeeding year's estimated taxes. " Id. at *9. Underpayment interest calculated under *I.R.C. § 6601(a)* is not at issue in this case and the cited ruling cannot be analyzed for consistency with *I.R.C. § 6611(b)(1).* n5

n5 Plaintiff also relies on a Technical Advice Memorandum *(Priv. Ltr. Rul. 94-43-007 (May 19, 1994), 1994 PRL LEXIS 1285),* and two other private letter rulings to support an application of underpayment interest principles to the overpayment sphere. However, pursuant to *I.R.C. § 6611(k)(3),* written determinations of the IRS, including private letter rulings, technical advice memoranda, and other determination letters, may not be cited as precedent. Plaintiff's reliance on Field Service Advice letters is also misplaced, as these letters are fact specific and clearly state that they are "not to be relied upon or otherwise cited as precedent." 1993 FSA LEXIS 155, 1 (Sept. 23, 1993).

[*21]

Defendant's reliance on Revenue Rulings is similarly unhelpful, as those cited merely establish the statutory history that served as a backdrop for Avon Products. As explained above, that case also dealt with the interpretation. *I.R.C. § 6601.* Defendant points out that the court "rejected the intricacies of the multiple Revenue Rulings" in May Department Stores. Def.'s Br. filed May 4, 2001, at 17. Thus, these Rulings are of no help in interpreting *I.R.C. § 6611(b)(1).*

Faced with a dearth of caselaw or applicable IRS rulings, the court fashions a decision which most comports with the statutory language and adheres to an acceptable guiding rationale. Defendant's position that the "due date of the amount against which the credit is taken" means the "due date" for the tax of the year in which the credit is taken comports more closely with the language of *I.R.C. § 6611(b)(1)* than does plaintiff's. Plaintiff's interpretation of "due date" would first extract "the amount against which the credit is taken" from the rest of the provision and then add the words "due and unpaid" to describe that[*22] amount. This reading would require the IRS to calculate not only each amount against which an overpayment is applied, but to also calculate interest to the date said overpayment was applied. This is an ad hoc approach that would doubtless require new procedures to be spelled out for this calculation. It would also be completely unpredictable, resulting in overpayment interest calculations performed not with regard to the statutory language itself or the operational events giving rise to a tax liability, but dependent on ministerial acts of the agency. The text of *I.R.C. § 6611(b)(1)* is not convincing that Congress intended such a haphazard result.

On the other hand, defendant's position that "due date" is defined by the Treasury Regulation harmonizes with the principle of predictability and comports with the statutory language. The "due date," as defined by *Treas. Reg. § 301.6611-1(h)(2)*, is "the last day fixed by law or regulation for the payment of the tax (determined without regard to any extension of time)." This date occurs with clockwork regularity and is easily determinable. More importantly, this date can fairly be read[*23] as the "due date of the amount against which the credit is taken." *I.R.C. § 6611(b)(1)*. This construction, in sum, does not require an "expansive reading" of the "use of money" principle that plaintiff espouses. *Brown & Williamson, 688 F.2d at 751; Martin-Marietta, 189 Ct. Cl. at 293, 418 F.2d at 502.* The court concludes that *Treas. Reg. § 301.6611-1(h)(2)*, and the thrust of the statutory language, if not its literal meaning, commend defendant's reading of *I.R.C. § 6611(b)(1)* and are sufficient to establish that the "due date" is "the last day fixed by law or regulation for the payment of tax (determined without regard to any extension of time)."

### 5. Sovereign immunity

Defendant inveighs that sovereign immunity prohibits an award of interest on the overpayment in this case, reciting the well-settled rule that "in the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Library of Congress v. Shaw, 478 U.S. 310, 314, 92 L. Ed. 2d 250, 106 S. Ct. 2957 (1986).*[*24] Defendant faults plaintiff for failing to cite any such "statute specifically authorizing the payment of interest in the circumstances of this case." Def.'s Br. filed May 4, 2001, at 5. This is a rather arch statement, considering that the majority of defendant's and plaintiff's arguments are directed to

just such a statute explicitly authorizing the payment of overpayment interest -- *I.R.C. § 6611(b)(1)*. More to the point, *I.R.C. § 6611(a)* explicitly states that "interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax . . . ."

As plaintiff points out, the issue in this case is not whether the United States is obligated to pay interest, but to what extent the United States is obligated to pay interest to plaintiff. n6 As the Federal Circuit held in a case addressing the rate of interest to be applied on a claim against the United States under the Contract Disputes Act of 1978, *41 U.S.C. §§ 601*-613 (1994 & Supp. V 1999), a claim of sovereign immunity is "irrelevant . . . where the dispute concerns not whether interest runs against the United States but how the interest is[*25] to be calculated." *J. F. Shea Co. v. United States, 754 F.2d 338, 340 (Fed. Cir. 1985).* Such reasoning applies with equal force in the instant case.

   n6 Indeed, the Government has already paid some overpayment interest in this case and makes no claim that such interest should be refunded.

### CONCLUSION

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court shall enter judgment for defendant.

IT IS SO ORDERED.

Christine Odell Cook Miller, Judge