IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE E.W. SCRIPPS COMPANY )
AND SUBSIDIARIES, )
) Case No. C-1-01-434
Plaintiff, )
) Judge Dlott
vs. )
)
UNITED STATES OF AMERICA, )
)
Defendant. )
_____ )

**UNITED STATES' REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**Overview**

1. Scripps altogether misstates the argument of the United States. The United States is not asserting that the Sixth Circuit does not employ a facts and circumstances test and it is certainly not asserting that until the IRS assesses or defines a liability, a remittance is a "per se deposit." Rather, consistent with the Sixth Circuit's decision in Ameel, (stating "a remittance that does not satisfy an asserted tax liability should not be treated as a 'payment' of tax."), if there is not an asserted liability (either by the taxpayer or the IRS) there is no need for the court to consider the facts and circumstances test because an asserted liability is a threshold requirement for a remittance to be considered a payment. Since, here, there was not an asserted liability, the threshold requirement is not met and there is no need for the Court to consider the facts and circumstances of the case.

2. Scripps's assertion that it is entitled to recover under a theory of equitable estoppel is without merit. While there may be a question as to whether equitable estoppel can ever be used against the government, there is no question that the Supreme Court has determined that equitable estoppel cannot be used against the government to obtain funds from the public treasury. See OPM v. Richmond, 496 U.S. 414 (1990). The doctrine of equitable estoppel cannot apply to this case.

3. Scripps's acknowledgment that it did not calculate its 1986 tax liability before it made

-2-

the remittance is dispositive. And while Scripps now asserts that perhaps it calculated its 1983 tax liability, or perhaps its net tax liabilities for several years, this has no bearing on the treatment or characterization of the December 31, 1990 remittance that Scripps designated for application to its 1986 tax account. Rather, Scripps's statements that it could not know to which year any such tax liability would accrue and that it should have requested the funds be applied to its 1983 tax year, rather than its 1986 tax year, wholly support the conclusion that at the time of the remittance, there was not a defined tax liability with respect to Scripps's 1986 tax year.

4. Finally, as to the factual question of whether the IRS treated the remittance as a payment, it is undisputed that the records of the IRS are inconsistent. The United States discussed this issue in detail in its Response to Scripps's Motion for Summary Judgment. While it is true that the document locator number on the IRS transcript reflects that the remittance was a payment, the Form 3244-A reflects that the remittance was a deposit. As such, the most that can be said is that the IRS transcript is not consistent with the Form 3244-A designation of a cash deposit or the correspondence and documents it sent to Scripps stating that the IRS considered the remittance a deposit, not a payment. However, for Scripps to assert that the IRS treated the remittance as a payment is more than an overstatement. If the IRS had treated the remittance as a payment, the characterization of the remittance would not be before this Court as a dispute between the parties. As noted by the Court in United States v. Tate & Lyle North American Sugars, 228 F. Supp.2d 308, 324 (S.D. N.Y. 2002), when the internal documents of the IRS are not consistent, they are not persuasive as to either a deposit or payment interpretation. Since there is nothing new to add to this argument, the United States' incorporates its Response to Scripps's Motion for Summary Judgment and does not further argue this point in this Reply Memorandum.

## Argument

### A. SCRIPPS'S CHARACTERIZATION OF THE UNITED STATES' ARGUMENT IS BLATANTLY WRONG

Contrary to Scripps's assertion, the United States is not stating that the "facts and circumstances" test is not applicable in the Sixth Circuit. Rather, to the contrary, the United States asserts that before a court ever reaches a "facts and circumstances analysis" there must be some defined liability – determined by either the taxpayer or the IRS. As the Sixth Circuit states, "a remittance that does not satisfy an asserted tax liability should not be treated as a 'payment' of tax." Ameel v. United States, 426 F.2d 1270, 1273 (6th Cir. 1970). Here, that essential factor – an asserted liability -- is missing. As such, there is no need for the Court to consider the facts and circumstances because under the facts here, the threshold requirement of a defined liability is never met. While Scripps spends the majority of its brief arguing that the Sixth Circuit applies a facts and circumstances test, and that there is no requirement in the Sixth Circuit for an assessment before a payment, as stated, these contentions are not in dispute. While Scripps does not address the United States' contention that there must be defined tax liability before a remittance will be considered a payment, it is clear from the language of Ameel that the Sixth Circuit requires a defined liability.

> In general, a tax is considered 'paid' for purposes of the running of the period of limitations when a taxpayer files his return accompanied by his payment. . . On the other hand, where this is no tax liability computed and proposed, a remittance is to be treated as a cash bond to stop the running of interest on the amount 'dumped,' Busser v. United States, 130 F.2d 537 (3d Cir. 1942), or deposited until a more definite determination of the tax liability is asserted by the Government. Rosenman v. United States, 323 U.S. 658 (1945). In such cases, 'payment' occurs when the indefinite tax liability is further defined; such as by a formal assessment of a definite amount.

Ameel, 426 F.2d 1270 at 1272. Further, while some circuits do apply a strict requirement that there must be an assessment before a remittance can be characterized as a payment (See New York Life Insurance Company, 118 F.3d 1553 (Fed. Cir. 1997)), the United States is not asserting that this is a requirement in the Sixth Circuit. Scripps's characterization of the United States' argument is wholly

-3-

inaccurate.

The threshold requirement of some defined liability is not only explicitly stated in Ameel, as noted above, but also presumed under Scripps's asserted "facts and circumstances" test. Scripps states that one of the facts that must be considered under the "facts and circumstances test" is "when the liability was defined." Scripps's Response Memorandum at 1. If "when the liability was defined" is a fact the court must consider in determining whether a remittance is a deposit or a payment, then, consistent with Ameel and the United States' argument, Scripps's test presupposes that there has been a defined liability. For this factor – "when the liability was defined" – to have any meaning, it requires, at least at some point, a defined liability.

Scripps also complains that the United States is taking a position in this case that is inconsistent with positions it has taken in other cases. With respect to the cases cited by Scripps, Scripps does not state what is inconsistent about the position the United States has taken in those cases versus this case.[1] Even if the United States' position with respect to anther taxpayer was wrong, it is of no consequence because the United States can change its position, it can take inconsistent positions, and it can change its interpretation of the Internal Revenue Code. See Dickman v. Commissioner, 465 U.S. 330, 343 (1984). Additionally, since circuit courts vary in their approaches to determining various issues, and sometimes are in direct conflict with other circuits, the United States' position in a particular case may vary according to the law that a particular circuit applies. In the deposit versus payment arena, while some circuits apply a strict requirement that there must be an assessment before a remittance can be characterized as a payment ( See New York Life Insurance Company, 118 F.3d 1553 (Fed. Cir. 1997)), other circuits look to various facts and indicia in characterizing a remittance as a deposit or a payment. (See Ewing v. United States, 914 F.2d 499 (4th

---

[1] Scripps also cites a private letter ruling in this regard. As noted at the top of the private letter ruling, it is not to be cited as precedent. See also 26 U.S.C. § 6110(k)(3); PeerlessCorporation v. United States, 185 F.3d 922 (8th Cir. 1999).

Cir 1990)). It should be expected that the United States takes will take variations of circuit law into account in making its arguments.

B.  **SCRIPPS'S RESPONSE TO THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT ONLY REINFORCES THE FACT THAT SCRIPPS DID NOT HAVE A DEFINED TAX LIABILITY FOR ITS 1986 YEAR**

It appears that Scripps now agrees that it did not have a defined 1986 tax liability at the time it made the December 31, 1990 remittance to the Internal Revenue Service. As the declaration of Carroll confirms:

> "While the final outcome of the audit of our 1986 tax return was not yet known, we did know that our 1988 agreement to switch to the accrual method of reporting our taxable income would increase our 1986 taxable income (or reduce the 1986 net operating loss that we had carried back to 1983 and 1984)."

Carroll Declaration at ¶ 8 (attached to Scripps's Response Brief). Scripps may have calculated its increased income for 1986, but it did not calculate its increased liability. This was the point the United States addressed in its Memorandum in Support of its Motion for Summary Judgment. As Hackman stated, his calculations would have had no effect on Scripps's 1986 taxable income. Hackman Dep. at 30-31. As such, Scripps could not have had a defined tax liability (either one it defined or one defined by the IRS) when it made its December 31, 1990 remittance. And, of course, there was no such liability.

However, Scripps argues that it did determine that it had an overall net liability for the years 1981 through 1985 and that since it did have a substantial net operating loss for its 1986 year, perhaps it should have designated the December 31, 1990 remittance to its 1983 tax year. For example, Hackman states:

> "...although I was aware that Scripps had a $ 62 million net operating loss ("NOL") for 1986 that was carried back to earlier tax years, I did not focus on this fact in calculating Scripps' additional tax liability. Moreover,

> while it may now appear (at least to the IRS) that Scripps' designated tax
> and interest payment for 1986 should have instead been made for 1983..."

Hackman Declaration at ¶ 12 (attached to Scripps's Response Brief). Hackman goes on to state:

> " although Scripps was able to calculate the amount that it owed, it
> could not determine beyond a doubt, as a matter of bookkeeping, to
> which year this tax would ultimately apply."

Hackman Declaration at ¶ 12. That very well may be true, however, what could be determined beyond a doubt was that based upon the calculations performed by Hackman, Scripps could not have had a liability for the 1986 tax year. As Hackman stated in his deposition, the calculations he made would have had no effect on Scripps's 1986 tax liability. Hackman Dep. at 30-31.

Significantly, Scripps does not state how it is that its calculation of either an overall net increased liability for the years 1981 through 1985, or an increased 1983 tax liability, impacts the characterization of its December 31, 1990 remittance that Scripps specifically designated to its 1986 tax account. Scripps decries that the United States assumes Scripps was not aware of the $ 62 million net operating loss stated on the previously filed 1986 tax return. However, the United States was giving Scripps the benefit of the doubt. If, as Scripps now asserts, it was aware of the $ 62 million operating loss at the time Hackman made his calculations, Scripps has no plausible excuse for now stating that it intended to make a payment for its increased 1986 tax liability. Not only does this demonstrate that there was no defined tax liability for the 1986 taxable year, but also that Scripps could not have intended to pay a tax liability because it was well aware that one did not and could not exist.

That Scripps calculated that it had an increased liability, either an increased net liability for the 1981 through 1985 tax years or an increased 1983 liability, does not change the fact that Scripps designated its December 31, 1990 remittance to its 1986 tax account and that there was no defined liability for the 1986 year. "Income taxes are levied on an annual basis [and] [e]ach year is the origin of a new liability and of a separate cause of action." Commissioner v. Sunnen, 333 U.S. 591, 598

(1931). The IRS may apply a voluntary payment as it wishes, but when a taxpayer provides specific instructions designating the payment to a specific tax year, the IRS must follow a taxpayer's designation. Muntwyler v. United States, 703 F.2d 1030, 1032 (7th Cir. 1983); see also Martin v. Commissioner, 90 A.F.T.R.2d 2002-5009, 2002-2 USTC ¶ 50,549 (4th Cir. 2002)(citations omitted). If, as Scripps now asserts, Scripps should have applied the December 31, 1990 remittance to its 1983 tax account, Scripps should not expect the United States government to compensate it for its error.

### C. SCRIPPS CANNOT PREVAIL UNDER THE THEORY OF EQUITABLE ESTOPPEL

Scripps cannot recover under a theory of equitable estoppel. Equitable estoppel cannot be used against the United States to obtain a payment of money that is not authorized by Congress. OPM v. Richmond, 496 U.S. 414, 423-24 (1990). As the Richmond Court stated, "[o]pinions have differed on whether this Court has ever accepted an estoppel claim in other contexts..., but not a single case has upheld an estoppel claim against the Government for the payment of money." Id. at 427. There must be some statute that authorizes the payment of funds. Id. at 424. Any equitable estoppel argument must be premised on the conclusion that Scripps's remittance was not a payment, but a deposit. "Equitable estoppel does not rest on the grounds that the claimant is in reality entitled to the benefit or status in question. Rather, equitable estoppel responds to the unfairness inherent in denying the claimant some benefit after it has reasonably relied on the misrepresentations of an adverse party." United States v. Marine Shale Processors, 81 F.3d 1329, 1348 (5th Cir. 1996). There is no statute that authorizes interest payments on deposits. There is also no statute that waives the United States' sovereign immunity to bring an action for the return of a deposit in this Court. See New York Life v. United States, 118 F.3d 1553 (Fed. Cir. 1997). Since applying equitable estoppel here would require a payment to Scripps not authorized by a statute, it cannot be used against the government regardless of the facts Scripps asserts.

## Conclusion

Scripps's December 31, 1990 remittance cannot be characterized as a payment with respect to its 1986 income tax liability because neither Scripps nor the IRS calculated an additional liability, and in fact, there was no such additional liability. Scripps now acknowledges that it did not calculate a 1986 tax liability, and that it was well aware that the previously filed 1986 return contained a substantial net operating loss so that there clearly would be no 1986 tax liability. Under any theory proposed by Scripps, the December 31, 1990 remittance cannot have been a payment. The United States' Motion for Summary Judgment should be granted.

GREGORY G. LOCKHART
United States Attorney

*Stacy Hallett by Berkel F. Karnely*
STACY HALLETT
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6499

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT has been made upon the following by depositing a copy in the United States mail, postage prepaid, this 9th day of May 2003:

> Paul P. Eyre
> William M. Toomajian
> Thomas R. Lucchesi
> Rebecca C. Lutzko
> Baker & Hostetler LLP
> 3200 National City Center
> Cleveland, Ohio 44114-3485

*/s/ Gerald F. Kaminski*