03 MAY -9 PM 3:30

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE E.W. SCRIPPS COMPANY AND SUBSIDIARIES,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | CASE NO. C-1-01-434<br><br>HONORABLE SUSAN DLOTT |

## REPLY BRIEF OF THE E.W. SCRIPPS COMPANY AND ITS SUBSIDIARIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff, The E.W. Scripps Company and its subsidiaries ("Scripps") files this Reply Brief in support of its Motion for Summary Judgment.

### Preliminary Statement

In opposing Scripps' Motion for Summary Judgment, the IRS repeats the argument that it advanced in support of summary judgment in *its* favor. Specifically, the IRS contends that application of the "facts and circumstances test" to determine the characterization of Scripps' $7 million remittance requires a threshold showing by Scripps of a "defined tax liability." There is no legal support for the IRS' position. Indeed, the IRS' argument is contrary to the very essence of the facts and circumstances test—which was a movement away from the prior *per se* test— and, moreover, is contrary to the position taken by the IRS in at least one other similar matter.



Additionally, the IRS contends that Scripps' claim of equitable estoppel must fail because such a claim cannot be used to obtain payment of money not authorized by Congress. This argument ignores the fact that the payment of interest sought by Scripps herein *is* authorized by Congress. The IRS' further contention that there was no wrongdoing on its part cannot be taken seriously. If the conduct of the IRS in this case does not amount to wrongdoing, then nothing does.

Simply put, Scripps is entitled to summary judgment in its favor to the effect that its 1990 remittance to the IRS was an overpayment of tax upon which Scripps is entitled to receive interest. The IRS' position to the contrary cannot be supported.

## Discussion

### I. The Facts And Circumstances Test Does Not Include Any "Threshold" Showing Of A Defined Tax Liability.

It is undisputed (although only grudgingly admitted by the IRS)[1] that, in the Sixth Circuit, the facts and circumstances test is used to determine the characterization of a taxpayer's remittance. This test employs the consideration of a number of items, including: when the tax liability was defined; the taxpayer's intent; and the manner in which the IRS internally treated the remittance. *See, e.g., Ameel v. United States*, 426 F.2d 1270, 1273 (6th Cir. 1970); *Gabelman v. Commissioner*, 86 F.3d 609, 663 (6th Cir. 1996); *Ewing v. United States*, 914 F.2d 499, 503 (4th Cir. 1990); *Blatt v. United* States, 34 F.3d 252, 255 (4th Cir. 1994); *Moran v. United States*,

---

[1] In its Memorandum in Support of its own Motion for Summary Judgment, the IRS sets forth its apparent disagreement with the law of the Sixth Circuit in stating: "The fact-intensive inquiry sometimes pursued in the so-called 'facts and circumstances' test of some courts is often wasteful of judicial and taxpayer resources and should almost never be necessary." (*IRS Memorandum*, p. 9, footnote 2.) Unfortunately for the IRS, the facts and circumstances test is the test of this Circuit, as well as that in the Second, Third, Fourth, Seventh and Federal Circuit Courts. Based upon this criticism, it seems apparent that the IRS is well aware that the proper application of the facts and circumstances test does not include a preliminary threshold finding of a defined tax liability.

2

63 F.3d 663, 668 (7th Cir. 1995); *overruled on other grounds, Malachinski v. Commissioner*, 268 F.3d 497 (7th Cir. 2001).

None of these cases (or any reported decision employing the facts and circumstances test) include the concept of a "defined tax liability" as a prerequisite or threshold showing that is necessary prior to consideration of any of the other facts and circumstances surrounding a taxpayer's remittance. The IRS does not cite a single case to directly support its argument that Scripps must make such a threshold showing in order to prevail.[2] Moreover, at least one court has expressly rejected the IRS' attempt to focus solely on an "asserted" tax liability. *Ford v. United States*, 618 F.2d 357, 360 n.3 (5th Cir. 1980) (expressly rejecting IRS argument to disregard taxpayer intent and look solely to existence of asserted tax liability).

To the extent that courts have allowed the consideration of a particular factor to predominate over the others, it would appear that the taxpayer's subjective, good faith intent has been given particular weight. *See, e.g., Ameel*, 426 F.2d at 1273. ("A[n] *essential* factor in 'payment' before assessment is the satisfaction or discharge of *what the taxpayer deems a liability*." (Emphasis added.) *See also, Ewing*, 914 F.2d at 504 ("[A] payment results from the remittance by a taxpayer concomitant with the recognition of a tax obligation whether by filing with a return, resolution of a dispute by an agreement . . . or otherwise.") In this case, the issue of Scripps' intent is not in dispute, as even the IRS concedes that Scripps intended to make a payment of tax.

The Court should properly consider *all* the facts and circumstances surrounding Scripps' remittance. In fact, on at least one prior occasion—a situation in which there was no defined tax liability—the IRS strongly urged a consideration of all factors. Quite tellingly, the IRS did so

---

[2] In its Opposition Brief, the IRS' citation to authority never follows directly after the assertion that a defined tax liability is a required element of the facts and circumstances test.

3

relying upon many of the *same cases* that it now contends support its contrary argument that the facts and circumstances test requires a defined tax liability. In a Technical Advice Memorandum dated December 14, 1995, the IRS stated:

> Whether a remittance is a payment or a deposit is a question of fact ***to be determined by examining all the relevant facts and circumstances.*** *Ewing v. United States*, 914 F.2d 499, 503 (4th Cir. 1990); *Ameel v. United States*, 426 F.2d 1270, 1273 (6th Cir. 1970); *Gabelman v. Commissioner*, T.C. Memo. 1993-592. ***Relevant facts include (1) when the tax liability is defined, (2) the taxpayer's intent in remitting the money, and (3) how the Service treated the remittance upon receipt.*** *Blatt v. United States*, 34 F.3d, 252, 255 (4th Cir. 1994), *Ewing*, 914 F.2d at 503; *Gabelman*, T.C. Memo. 1993-592. ***A crucial fact is the intent of the taxpayer at the time the remittance was made.*** *Blatt*, 34 F.3d at 255; *Gabelman*, T.C. Memo. 1993-592. *See also Ford v. United States*, 618 F.2d 357, 360 (5th Cir. 1980). Generally, ***a remittance is considered a payment if the taxpayer intends that the remittance satisfy what the taxpayer regards as an existing tax liability.*** *Rosenman*, 323 U.S. 658 at 661-662; *Blatt*, 34 F.3d at 255; *Ameel*, 426 F.2d at 1273; *Hill v. United States*, 263 F.2d 885, 886 (3d Cir. 1959); *Lewyt Corp. v. Commissioner*, 215 F.2d 518, 522-523 (2d Cir. 1954), *aff'd in part and rev'd in part on other grounds*, 349 U.S. 237; *Gabelman*, T.C. Memo. 1993-592.

IRS Tech. Adv. Mem. 96-13-001 at *6-7 (Dec. 14, 1995). (Emphasis added.) (A copy is attached as Exhibit A to *Scripps' Opposition to United States' Motion for Summary Judgment*.) The IRS should not be permitted to argue both sides of the same point.

## II   There Is a Defined Tax Liability In This Case.

The IRS' Opposition Brief equates the concept of defined tax liability with a formal assessment or determination of tax by the IRS.[3] Again, there is no support for this position.

---

[3] Perhaps this is a result of the IRS' desire to return to the days of the *per se* test. Under that test, a taxpayer's remittance made in the absence of a formal assertion by the government of a tax liability is *per se* a deposit in the nature of a cash bond and cannot be considered a payment of tax.

4

Both the IRS and Scripps were aware in 1990 (when the remittance was tendered) that the parties' binding 1988 agreement to retroactively change to the accrual method of accounting would increase Scripps' tax liability. Scripps put a significant amount of effort into defining that tax liability prior to making the $7 million remittance to the IRS.[4] The undisputed facts establish Scripps did not "estimate" or "guess" at its liability. Instead, Scripps made a detailed calculation of its tax liability and paid what it believed was owed. That is, in essence, a defined tax liability. The IRS should not be allowed to limit the construction of that term to include only liabilities established by the *government's formal assertion or determination of a tax*. Such a result would resurrect the now abandoned *per se* rule.

### III.  The IRS Treated The Remittance As A Payment Of Tax.

In its Opposition Brief, the IRS disputes the claim that it treated the remittance as a payment of tax. (*IRS Opposition*, p. 9.) Given the state of this record, however, there can be no genuine dispute on this point.

To begin with, the IRS' reliance on Form 3244-A is unavailing in light of the unrebutted testimony of Scripps' representatives that the Form was initially objected to and was only acquiesced in when IRS Agent Saewitz *added* language to the Form that he represented clarified Scripps' intent to make a payment of tax.[5] (*Scripps Memorandum in Support*, pp. 6 through 8.)

---

[4] The effort put into determining this liability is detailed in Scripps' Opposition Brief at pages 9 through 13. The IRS' attempt to downplay this effort to make it appear as if Scripps "dumped" funds with the IRS and as if there was no defined tax liability would be laughable if the underlying issues were not so serious.

[5] Moreover, to the extent that Form 3244-A is ambiguous, it should be disregarded. *See Malachinski v. Commissioner*, 268 F.3d 497, 507 n.7 (7th Cir. 2001) (a voucher that supports either payment or deposit interpretation is not persuasive as to either).

Moreover, Amy Ravenscraft, the IRS' designated Rule 30(b)(6) witness to testify regarding the IRS' internal treatment of Scripps' remittance, unequivocally stated that the remittance was treated as a payment of tax. She testified:

> Q: In your looking at the [account transcripts] regarding this payment of 12/31/90, did you see anything in there that helped you or told you that it was treated as a cash bond?
>
> A: No.
>
> Q: Anything you saw indicated that the Internal Revenue Service was treating it as a prepayment of tax?
>
> A: That's correct.
>
> \* \* \*
>
> Q: Other than the form 3244-A where the cash bond is checked, in all the records of the IRS, any other records, including computer records, the payment was treated as a prepayment of tax and not a cash bond.
>
> A: The records that I viewed, yes, that's exactly correct.
>
> Q: And you, I assumed, reviewed the appropriate records in the entire group of records you could to ascertain how the payment was being treated internally.
>
> A: Yes, but there were documents I was unable to obtain.
>
> Q: Which documents are those?
>
> A: The payment posting voucher. I wanted to—there was a refund issued. I was unable to secure the information related to that refund. Those two things.
>
> Q: You have no reason to believe that anything you would have seen, other than what you already saw, would have changed your view that this was treated as a prepayment of tax?
>
> [Objection omitted.]
>
> A: I can't agree or disagree. I would have to see what they had to say.

> Q: But you're here today to testify that, based on your getting ready for this deposition and the records you reviewed, the IRS internally treated the 12/31/90 payment as a prepayment of tax.
>
> A: I'm here to explain our processes and procedures regarding a cash payment.
>
> Q: And you would agree with me, that's how it was treated in this instance.
>
> A: Yes, with the information I have.
>
> * * *
>
> Q: There's nothing else internally that you have that can show that this payment was treated as a cash bond, right? I mean, the only thing you've ever referred to is the original 3244-A.
>
> A: Right. Computer-wise, there's no indication it was a cash bond.
>
> Q: Right, so anything else you looked at internally . . . confirmed for you that it was treated as a prepayment of tax, internally.
>
> A: Yes, it was.
>
> Q: You, being the IRS, processed it as a prepayment of tax.
>
> A: Yes we did.

(Ravenscraft Dep. 31-32, 34-35, 47, 54.)[6]

In light of this sworn testimony by the IRS' designated representative, the unsworn, bald assertions to the contrary in the IRS' Opposition Brief cannot be considered as evidence.[7] Thus, there is no genuine dispute—the IRS treated Scripps' remittance as a payment of tax.

---

[6] A copy of the transcript of Amy Ravenscraft's deposition is attached to Scripps' Memorandum in Support as Exhibit F.

[7] Equally unavailing is the IRS' argument that the Document Locator Number (DLN) is "hearsay" and is contradicted by more probative direct evidence. (*IRS Opposition Brief*, pp. 9-10.) First of all, the DLNs are not hearsay. Rather, they constitute in this instance an admission and, as such, are outside the definition of hearsay pursuant to Fed. R. Evid. 801(d)(2). Moreover, the IRS wholly fails to identify any more probative direct evidence. The DLNs used

7

### IV. Scripps Is Entitled To Prevail On Its claim Of Equitable Estoppel.

The IRS challenges Scripps' equitable estoppel claim by contending first that the claim must fail because it seeks the payment of money not authorized by Congress. The IRS is wrong. Scripps seeks in this litigation to recover interest on an overpayment of tax. Such interest is expressly allowed by 26 U.S.C. § 6611(a).

Next, the IRS contends the claim must fail because Scripps cannot establish the requisite degree of wrongdoing on the part of the IRS. In this regard, the IRS claims its employee—presumably Agent Saewitz—was merely "wrong" and, further, that Scripps was not legally entitled to rely on Agent Saewitz's statements about the law. In this instance, the IRS is again mistaken.

The record establishes Agent Saewitz's conduct and his repeated assurances to Scripps that the $7 million would be a payment of tax. Agent Saewitz was not opining on the law when he made these assurances to Scripps. He was telling Scripps that he was protecting Scripps' interest and was ensuring the remittance would be treated as the payment of a tax, as Scripps desired. Based on those assurances, Scripps paid the IRS $7 million. In fact, Agent Saewitz did nothing to ensure the remittance would be treated as a payment of tax. As the record in this case makes painfully apparent, Agent Saewitz did not even understand what the Form 3244-A meant or how it was to be filled out. He did not follow up on his promises and assurances after the IRS had received Scripps' money.

---

by the IRS in connection with Scripps' remittance are consistent with the treatment of the remittance as a payment of tax and are flatly inconsistent with the IRS' current claim that it acted otherwise.

8

Agent Saewitz, by repeatedly reassuring Scripps that its desire to make a payment of tax was being carried out, engaged in active wrongdoing. He knew or should have known better. Frankly, the Government should be held to a higher standard of conduct.

### V.    A Note About The Calculation Of The Interest Due To Scripps.

The IRS disputes Scripps' calculation of $2,124,734.22 as the interest due through March 15, 2003. In the event this Court determines the issues herein in Scripps' favor (as it should), Scripps has no objection to an evidentiary hearing to determine the amount of interest to which it is entitled.

### Conclusion

Scripps is entitled to summary judgment in its favor and to an award of statutory interest, as allowed by law, on its $3,500,000 overpayment to the IRS for the 1986 tax year.

Respectfully submitted,

Paul P. Eyre, *Trial Attorney* (0025756)
William M. Toomajian (0025740)
Thomas R. Lucchesi (0025790)
BAKER & HOSTETLER LLP
3200 National City Center
Cleveland, Ohio 44114-3485
(216) 621-0200

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

A copy of the foregoing Reply Brief of The E.W. Scripps Company and its Subsidiaries in Support of Motion for Summary Judgment was sent by first-class U.S. mail, postage prepaid, upon Stacey S. Hallett, attorney for the defendant, at Tax Division, Department of Justice, P.O. Box 55, Ben Franklin Station, Washington, D.C. 20044, on this 2nd day of May, 2003.

_____
One of the Attorneys for Plaintiff


G:\CLdata\TRL0603\95070\00020\pleadings\Reply Brief-MSJ.doc