RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0359p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

**FOR YOUR INFORMATION**

THE E.W. SCRIPPS COMPANY AND SUBSIDIARIES,
    *Plaintiff-Appellee*,

v.

UNITED STATES OF AMERICA,
    *Defendant-Appellant*.

No. 03-4438

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 01-00434—Susan J. Dlott, District Judge.

Argued: November 2, 2004

Decided and Filed: August 19, 2005

Before: MOORE and GIBBONS, Circuit Judges; EDMUNDS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Steven W. Parks, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Paul P. Eyre, BAKER & HOSTETLER, Cleveland, Ohio, for Appellee. **ON BRIEF:** Steven W. Parks, Gilbert S. Rothenberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Paul P. Eyre, Thomas R. Lucchesi, Rebecca Lutzko, BAKER & HOSTETLER, Cleveland, Ohio, James Orenstein, BAKER & HOSTETLER, New York, New York, for Appellee.

---

## OPINION

KAREN NELSON MOORE, Circuit Judge. In the underlying action, Plaintiff-Appellee The E.W. Scripps Company and Subsidiaries ("Scripps") seeks to recover interest payments from Defendant-Appellant United States of America ("the Government") based on Scripps's overpayment of tax. On appeal, the Government has not challenged the district court's determination that Scripps is entitled to statutory interest because the $3.5 million Scripps tendered to the Internal Revenue Service ("IRS") constituted a payment of tax rather than a cash bond. Instead, the Government has asserted only that the district court lacked subject matter jurisdiction over Scripps's suit and that the

---

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

action should be transferred to the U.S. Court of Federal Claims. For the reasons set forth below, we conclude that the district court properly exercised subject matter jurisdiction over this suit, and thus we **AFFIRM**.

## I. FACTUAL AND PROCEDURAL HISTORY

This case pertains to a federal income tax return filed by Scripps almost two decades ago. In 1986, Scripps calculated its federal-income-tax liability using a cash-basis accounting system. Two years later, in 1988, Scripps entered into an agreement with the IRS providing that Scripps would convert to an accrual accounting method and that it would recalculate its tax liability for tax years 1980 forward.

In 1990, Scripps decided to make a payment on its adjusted tax liability for tax years 1985 and 1986 so that interest would stop accruing on the outstanding liability, and so that Scripps could take a deduction on its 1990 tax return for the portion of the payment allocated to interest. In the fall of 1990, Scripps's Corporate Tax Director, Michael Carroll ("Carroll"), asked Sidney Saewitz ("Agent Saewitz"), an IRS agent assigned to audit Scripps, to calculate the amount of tax and interest Scripps owed for tax years 1985 and 1986. Agent Saewitz responded that the IRS would be unable to provide such information by the end of the 1990 tax year. Still wishing to make a tax payment in tax year 1990, Jerome Hackman ("Hackman"), a member of Scripps's corporate tax department, attempted to calculate the amount owed by Scripps for tax years 1985 and 1986, arriving at a figure of $9.7 million in additional tax and interest owed. Not wanting to remit a payment in excess of its actual liability, Scripps reduced its planned payment to $7 million. On December 31, 1990, Scripps delivered a $7 million check to the IRS care of Agent Saewitz. Scripps included with the check a cover letter addressed to Agent Saewitz stating that:

> As we have discussed previously, The E.W. Scripps Company and subsidiaries desire to prepay and thereby stop the interest accumulation on the 1985-86 adjustments anticipated as a result of our previous settlement with the Internal Revenue Service, which changed our publishing affiliates' method of reporting from the cash method to the accrual method as of 1980.
>
> Our check for $7,000,000 is being hand-delivered with this authorization letter by our Jerome P. Hackman to you today. . . .
>
> Please have the duplicate copy of this letter date-stamped and given to Mr. Hackman as our evidence of the Internal Revenue Service's receipt of this payment.

Joint Appendix ("J.A.") at 309. The letter also explained that $3.5 million should be allocated to each tax year (i.e., $2 million to each tax year's adjusted tax liability and $1.5 million to interest accrued on each tax year's adjustment).

Agent Saewitz completed a Form 3244-A Payment Posting Voucher ("Voucher") in connection with the payment. In doing so, Agent Saewitz checked a box indicating that the payment was a "[c]ash bond." J.A. at 311 (Voucher). Hackman alerted Agent Saewitz to the fact that the cash bond box had been checked on the Voucher, despite Scripps's desire to have the $7 million treated as a payment of tax and interest. Agent Saewitz replied that he had been informed that the cash bond box had to be checked in order for the transaction to be processed, and he assured Hackman that the payment would be treated as a payment of tax and interest.

In 1995, the IRS determined that, even after recalculating Scripps's tax liability using an accrual accounting method, Scripps did not owe any additional tax for 1986 due to a large net operating loss. Scripps then sought return of the $3.5 million it had paid in 1990 that was

No. 03-4438          *The E.W. Scripps Co. v. United States*                               Page 3

attributable to the 1986 tax year, but the IRS informed Scripps that no refund could be made until the 1986 audit was closed because the $3.5 million was payment of tax, not a cash bond. Agent Saewitz, however, assured Carroll that the refund would include interest on the $3.5 million tax overpayment.

At some point between October 1995 and April 1996 (i.e., during the audit of tax year 1990), Agent Saewitz informed Scripps that the $7 million payment would be treated as a cash bond, that Scripps could not deduct the interest portion of the $7 million on its 1990 tax return, and that Scripps would not receive any interest on the overpayment. In September 1997, the IRS refunded to Scripps $3.5 million for its overpayment in tax year 1986. When the IRS closed its audit of the 1990 tax year in January 1998, the IRS permitted Scripps to deduct the $1.5 million interest portion of the $7 million payment on its 1990 return, despite its earlier indications that the interest deduction would be disallowed. Scripps then filed a claim with the IRS in September 1998 on the basis that it was entitled to interest on the $3.5 million paid to the IRS for tax year 1986 because it constituted an overpayment of tax.

The IRS denied the claim in November 2000, and Scripps filed suit in the U.S. District Court for the Southern District of Ohio in June 2001. The Government moved for dismissal of Scripps's action on the basis that 28 U.S.C. § 1346(a)(1) did not waive the Government's sovereign immunity with respect to taxpayer claims for interest on overpayments when the overpaid tax had already been refunded to the taxpayer via administrative (i.e., non-judicial) means. The district court denied the Government's motion to dismiss, concluding that statutory interest, "which represents the time value of the alleged erroneously collected funds, is an integral and inseparable part of the original overpayment," J.A. at 100 (D. Ct. Op. Denying Def.'s Mot. to Dismiss at 7), and thus falls within § 1346(a)(1)'s waiver of sovereign immunity for suits seeking recovery of an "internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1). The parties subsequently filed cross-motions for summary judgment, and the district court ruled that the $3.5 million should be characterized as an overpayment of tax for which Scripps was entitled to receive statutory interest, as opposed to a cash bond or deposit upon which the Government would not be required to pay interest. The district court entered judgment for Scripps in the amount of $2,782,936.28, the stipulated amount of statutory interest due. The Government now appeals the district court's entry of judgment in favor of Scripps, contending that the district court lacked subject matter jurisdiction over the action and that the action should be transferred to the U.S. Court of Federal Claims.

## II. ANALYSIS

That district courts have subject matter jurisdiction over taxpayer suits for interest on tax overpayments at first blush appears so obvious that many courts have found no need to dwell on the question at any great length. *See Doolin v. United States*, 737 F. Supp. 732, 733-34 (N.D.N.Y.) ("Such consent [to suit by the federal government] is found, obviously, when Congress confers jurisdiction over a particular matter upon the district courts. In this regard, and without undue further elaboration, the court agrees . . . that a federal district court having subject matter jurisdiction over taxpayer refund suits by virtue of 28 U.S.C. § 1346(a)(1) also has subject matter jurisdiction over disputes, perhaps ancillary particularly where the underlying liability has been established and discharged, regarding the interest required by Congress to be paid on tax overpayments under 26 U.S.C. § 6611(a) and (b)(2)."), *rev'd on other grounds*, 918 F.2d 15 (2d Cir. 1990); *Phico Group, Inc. v. United States*, 692 F. Supp. 437 (M.D. Pa. 1988) (making no reference to subject matter jurisdiction); *Gen. Motors Corp. v. United States*, 389 F. Supp. 245, 246 (E.D. Mich. 1975) (stating without further elaboration that "[t]his court has jurisdiction under 28 U.S.C. § 1346(a)"); *Citadel Indus., Inc. v. United States*, 314 F. Supp. 245 (S.D.N.Y. 1970) (ruling on cross-motions for summary judgment without stating basis for exercising jurisdiction); *Draper v. United States*, 62-2 T.C. ¶ 9697, 1962 U.S. Dist. LEXIS 4982, at *6 (E.D. Wash. 1962) (summarily concluding that

"[t]he Court has jurisdiction of this controversy and of the Plaintiffs hereto" based on 28 U.S.C. § 1346(a)(1)).

This ease in finding subject matter jurisdiction likely results from the fact that Congress has made quite clear that, as a general matter, taxpayers who are adjudged to have paid too much in taxes should be able to sue the federal Government and recover interest as compensation for the lost time-value of such overpayments. *See* 26 U.S.C. § 6611(a) ("Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621."); 28 U.S.C. § 2411 ("In any judgment of any court rendered (whether against the United States, a collector or deputy collector of internal revenue, a former collector or deputy collector, or the personal representative in case of death) for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the overpayment rate established under section 6621 of the Internal Revenue Code of 1986 upon the amount of the overpayment, from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner of Internal Revenue. The Commissioner is authorized to tender by check payment of any such judgment, with interest as herein provided, at any time after such judgment becomes final, whether or not a claim for such payment has been duly filed, and such tender shall stop the running of interest, whether or not such refund check is accepted by the judgment creditor."); *see also* 28 U.S.C. § 1961(c)(1). Further contributing to this ease in finding subject matter jurisdiction is 28 U.S.C. § 1346(a)(1), which vests the district courts with broad jurisdiction over suits brought by taxpayers against the federal government:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]

28 U.S.C. § 1346(a)(1).

Indeed, the Government concedes that, under § 1346(a)(1) and § 2411, the district court would have had jurisdiction over Scripps's claim for interest if Scripps's suit also sought a refund of the $3.5 million overpayment. The Government also concedes that if the interest sought by Scripps were not more than $10,000, the district court would have jurisdiction over a stand-alone claim for interest. *See* 28 U.S.C. § 1346(a)(2) ("The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . ."). Thus, the question before us is a rather narrow one: does the district court have subject matter jurisdiction over a claim for interest on an overpayment of tax when there is no separate claim seeking a refund of the overpaid tax and the interest sought by the taxpayer exceeds $10,000? We conclude that the district court does have subject matter jurisdiction.

### A. *Cleveland Chair*

As an initial matter, we must consider whether the Government is correct in asserting that our decision in *Cleveland Chair Co. v. United States*, 526 F.2d 497 (6th Cir. 1975), is controlling in this case and renders the exercise of subject matter jurisdiction by the district court improper. After reviewing the factual circumstances of *Cleveland Chair*, we conclude that it is readily distinguishable from the case at bar.

In *Cleveland Chair*, the plaintiff taxpayers had been adjudged, in an earlier U.S. Tax Court proceeding, to owe $1.4 million in income tax. *Id.* at 498. The Tax Court entered a stay of assessment and collection of taxes pending the taxpayers' appeal to this court. As a condition of the stay, the plaintiffs posted $995,000 in U.S. Treasury notes in lieu of appeal and supersedeas bonds, which were then transferred to the Treasurer of the U.S. *Id.* The notes matured in April 1966, but the Treasurer held the notes until May 1967 without converting or reinvesting them. *Id.* Thus, the taxpayers earned no interest on the notes for over a year. The plaintiff taxpayers were later required to pay interest on their income tax deficiency, including for the year-long period that the notes were not generating interest. *Id.* The plaintiff taxpayers subsequently filed suit in the district court alleging that they had made an overpayment of taxes equal to the amount of the lost interest income. The district court concluded that it lacked jurisdiction over the suit and that the action should be transferred to the U.S. Court of Claims (now the U.S. Court of Federal Claims). *Id.*

The plaintiff taxpayers appealed to this court, and we ruled that the district court was correct in finding subject matter jurisdiction lacking. In so ruling, we explained that the action did not relate to the overpayment of taxes but rather "the non-action of a federal official in his capacity as a custodian." *Id.* at 498 ("'[W]e are dealing with an independent lawsuit to effect recovery of taxes alleged to have been overpaid when in fact no overpayment of taxes or of interest on taxes has occurred. . . . Whatever duty the United States may have had as a pledgee and whatever loss the plaintiffs may have sustained by reason of the breach of that duty, such loss could not constitute an overpayment of taxes merely because it occurred as an incident to tax litigation rather than some other type of litigation.'" *Id.* at 499 (citation omitted)).

The case presently at bar, however, directly pertains to an alleged overpayment of tax. Indeed, as the summary judgment proceedings below reveal, the central question before the district court was whether the $3.5 million tendered to the IRS constituted an overpayment of tax or whether it was instead a cash bond. *See The E.W. Scripps Co. & Subsidiaries v. United States*, 297 F. Supp. 2d 1018, 1023 (S.D. Ohio 2003) ("The sole issue here with respect to the United States' liability is whether Scripps's $3.5 million remittance for the 1986 tax year was a payment — and, thus, an overpayment — or a cash bond."). Hence, we conclude that our decision in *Cleveland Chair* does not control the outcome of the case at bar.

**B.    Overpayment Interest As "Any Internal-Revenue Tax Alleged To Have Been Erroneously Or Illegally Assessed Or Collected" Pursuant To 28 U.S.C. § 1346(a)(1)**

In denying the Government's motion to dismiss for lack of subject matter jurisdiction, the district court below based its decision on that portion of § 1346(a)(1) providing district courts with jurisdiction, concurrent with the U.S. Court of Federal Claims, over "civil action[s] against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . ." Specifically, the district court concluded that Scripps's suit fell within the scope of § 1346(a)(1) because "[t]he statutory interest compensates for that lost value and therefore should not be considered a sum separate from the initial overpayment. Consequently, an overpayment is not fully refunded until the statutory interest accrued during the time the government held the money has been disgorged by the government." J.A. at 99 (D. Ct. Op. Denying Def.'s Mot. to Dismiss at 6). In reaching this conclusion, the district court referenced the U.S. District Court for the District of Connecticut's decision in *Trustees of the Bulkeley School v. United States*, 628 F. Supp. 802 (D. Conn. 1986), in which Judge Cabranes also ruled that district court jurisdiction was proper under the tax-refund provision of § 1346(a)(1):

> It is clear that the plaintiff is seeking to recover an "internal-revenue tax alleged to have been erroneously or illegally assessed or collected" as is permitted by Section 1346(a)(1). The Congress, by requiring the government to pay interest on tax overpayments, *see* 26 U.S.C. § 6611, implicitly recognized that refunds of taxes

> overpaid in previous years must be appropriately adjusted to reflect the time value of money. A taxpayer has not received a full refund of "erroneously . . . collected" taxes until he has recovered not only the nominal amount of the collection but also an amount of interest that will compensate him for the loss of the use of his money between the time that he paid the tax and the time that he received the refund.

*Id.* at 803 (citation omitted).

The Government (not surprisingly) takes issue with this analysis. First, the Government argues that the Internal Revenue Code ("IRC") treats statutory interest on an overpayment of tax as separate and distinct from the overpaid tax itself, and thus statutory interest does not fall within the scope of "any internal-revenue tax alleged to have been erroneously or illegally assessed or collected" under § 1346(a)(1). In support of this argument, the Government distinguishes between the IRC's treatment of deficiency interest (i.e., the interest paid by a taxpayer on an underpayment of taxes) and statutory interest (i.e., the interest paid by the Government on an overpayment of taxes). Title 26 U.S.C. § 6601, which pertains to deficiency interest, specifically provides for the treatment of deficiency interest, in most contexts, as part of the underpaid tax. *See* 26 U.S.C. § 6601(e)(1) ("Interest treated as tax.– Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax."). However, § 6611, which pertains to statutory interest on overpayments of tax, does not contain a similar provision, which arguably implies that interest on an overpayment of taxes should not be treated as part of the overpaid tax itself. *See Chase Manhattan Bank, N.A. v. Gov't of the Virgin Islands of the United States*, 173 F. Supp. 2d 386, 391 (D.V.I. 2001) (explaining that "[t]his absence of similar language makes perfect sense because overpayments can bear no tax liability, whereas additions, underpayments, and penalties, are taxes by definition. Since there is nothing taxable about overpayments, they impose no substantive tax liability and sections 6611 and 6621 of the federal income tax law are merely administrative provisions to aid the government in calculating the amount of interest it owes the overpaying taxpayer."), *rev'd on other grounds*, 300 F.3d 320 (3d Cir. 2002).

The Government also contends that the district court's treatment of statutory interest as falling within the scope of "any internal-revenue tax alleged to have been erroneously or illegally assessed or collected," 28 U.S.C. § 1346(a)(1), runs afoul of the general rule that Congress must explicitly waive the federal government's immunity to claims for interest. *See Library of Cong. v. Shaw*, 478 U.S. 310, 314 (1986) ("In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award."). In this regard, the Government argues that the district court's reliance on our decision in *United States v. $515,060.42 in United States Currency*, 152 F.3d 491 (6th Cir. 1998) is misplaced. In *$515,060.42*, we concluded that the traditional rule that sovereign immunity bars claims against the government for interest did not apply to a suit for interest on property seized by the government in a forfeiture action because interest was "an aspect of the seized *res* to which the Government is not entitled . . . ." *Id.* at 504. The Government asserts that payment of interest in the forfeiture context is distinguishable from the payment of interest on an overpayment of taxes: while forfeiture actions involve the seizure and disgorgement of a specific *res*, tax refunds by the IRS ordinarily are not discussed in terms of returning particular dollars to a taxpayer. *See id.* (explaining that in forfeiture context, "there is no issue of sovereign immunity because the Government is not being asked to pay interest, but to disgorge property that was not forfeited"); *Morris Plan Indus. Bank of New York v. Comm'r*, 151 F.2d 976, 982 (2d Cir. 1945) (noting that suit filed by taxpayers seeking tax refund "was not what is commonly called 'in rem' or 'quasi in rem,'" but rather "was in personam").

After considering the Government's arguments, we acknowledge that it is perhaps arguable that interest on an overpayment of tax does not fall within the scope of "any internal-revenue tax" for purposes of § 1346(a)(1)'s waiver of sovereign immunity. However, we review de novo a district court's determination that it has subject matter jurisdiction over a particular suit, *see Sharp v. United States*, 401 F.3d 440, 442 (6th Cir. 2005), and we may affirm the district court's exercise of jurisdiction on any ground. Thus, because we believe that the district court did have subject matter jurisdiction over the case at bar based on the "any sum" clause of § 1346(a)(1), we need not determine whether or not we also agree with the district court and the many other courts who have found jurisdiction pursuant to the "any internal-revenue tax" provision of § 1346(a)(1). We leave resolution of that question for another day.

### C. Overpayment Interest As "Any Sum Alleged To Have Been Excessive Or In Any Manner Wrongfully Collected Under The Internal-Revenue Laws" Pursuant To 28 U.S.C. § 1346(a)(1)

In addition to providing for district court jurisdiction over suits "for recovery of any internal-revenue tax . . . erroneously or illegally assessed or collected," § 1346(a)(1) also furnishes district courts with jurisdiction over suits seeking recovery of "any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a)(1). We conclude that this latter provision does supply the necessary waiver of sovereign immunity for the district court to exercise jurisdiction over Scripps's claim for interest on its $3.5 million tax overpayment.

In *Flora v. United States*, 362 U.S. 145, 149 (1960), the Supreme Court analyzed the "any sum" provision of § 1346(a)(1) and explained that:

> "[A]ny sum," instead of being related to "any internal-revenue tax" and "any penalty," may refer to amounts which are neither taxes nor penalties. Under this interpretation, the function of the phrase is to permit suit for recovery of items which might not be designated as either "taxes" or "penalties" by Congress or the courts. One obvious example of such a "sum" is interest.

Despite this statement by the Supreme Court that the term "any sum" includes interest, the Government asserts that "any sum" does not encompass statutory interest on overpayments of tax because such interest is: (1) not "collected" by the Government, (2) not collected "under the internal-revenue laws," and (3) not "wrongfully" collected.

We believe, however, that these arguments lack merit because they ignore the fact that the "any sum" clause is disjunctive; not only does § 1346(a)(1) provide the district courts with jurisdiction over suits for "any sum alleged to have been . . . in any manner wrongfully collected under the internal-revenue laws," but also § 1346(a)(1) confers the district courts with jurisdiction over suits seeking "the recovery of . . . any sum alleged to have been excessive . . . under the internal-revenue laws." Moreover, the "excessive sum" phrase does encompass suits seeking recovery of statutory interest on overpayments. Congress, in enacting 26 U.S.C. § 6611 (which is part of the IRC and thus an "internal-revenue law[]"), has made clear that it believes that taxpayers should be compensated for the lost time-value of their money when they make overpayments of tax. The payment of statutory interest reflects an attempt to return the taxpayer and the Government to the same positions they would have been in if no overpayment of tax had been made. If the Government does not compensate the taxpayer for the time-value of the tax overpayment, the Government has retained more money than it is due, i.e., an "excessive sum." *See Int'l Bus. Machs. Corp. v. United States*, 201 F.3d 1367, 1374-75 (Fed. Cir. 2000) (noting with respect to the payment of interest on overpayments of tax under 28 U.S.C. § 2241 that "Congress has waived sovereign immunity in . . . the tax code . . . to permit interest to be paid on certain refunds to allow for the time

value of money when the Government has had the use for a period of time of money to which it is not lawfully entitled. Congress has considered this to be only fair and proper."), *cert. denied*, 531 U.S. 1183 (2001).

In its briefs on appeal, the Government cites *Amoco Production Co. v. United States*, No. 87C8811, 1988 WL 9112 (N.D. Ill. Feb. 5, 1988), in which the U.S. District Court for the Northern District of Illinois concluded that a suit seeking recovery of statutory interest on an overpayment of tax did not fall within the scope of § 1346(a)(1) and that the administrative-claim requirements of § 7422(a) did not apply. In reaching such a conclusion, however, the *Amoco* court failed to recognize that, although § 1346(a)(1) and § 7422(a) use parallel language,[1] the two provisions serve different functions and thus have their own independent meanings. *See Horizon Coal Corp. v. United States*, 43 F.3d 234, 239-40 (6th Cir. 1994) (rejecting government's contention that § 1346(a)(1) and § 7422(a) must be applied in tandem and concluding that district court did have jurisdiction over suit seeking recovery of reclamation fees paid to the Department of Interior under § 1346(a)(1), even though no refund claim was submitted to the Secretary of the Treasury under § 7422(a)). Thus, even though a claim for statutory interest on an overpayment of tax might not fall within the scope of § 7422(a), this does not prevent statutory interest from being included with the "any sum" clause of § 1346(a)(1).

In sum, we believe that, through the "any sum" provision of § 1346(a)(1), the federal government has waived its sovereign immunity with respect to suits for interest on overpayments of tax that are brought in federal district court. Thus, the district court properly exercised subject matter jurisdiction over this action.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the entry of summary judgment in favor of Scripps.

---

[1] *Compare* 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."), *with* 28 U.S.C. § 1346(a)(1) ("The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]").